*In re* MORRISON, Petitioner.

*In re* MORRISON, Petitioner.[1]

ORIGINAL.

Nos. 8, 9. Original. Argued December 12, 13, 1892. — Decided January 3, 1893.

A collision occurred, in Vineyard Sound, between the steam yacht A., at anchor, owned by V. of New York, and the steamship D., owned by a Massachusetts corporation. The A. sank. The corporation filed a libel against V., to limit its liability, in the District Court for Massachusetts, under §§ 4283 and 4284 of the Revised Statutes, alleging that the D. was lying at Boston, and averring no negligence in the D., and negligence in the A., and praying for an appraisement of the value of the D. and her pending freight at the time of the collision, and offering to give a stipulation therefor. It was alleged that the A. was worth over $250,000, and that the value of the D. and her freight was less than $150,000. The court appointed three appraisers, who made the appraisement *ex parte*, and reported the value of the D. at $80,000 and of her freight at $2395.33, and a stipulation was given for those amounts. A monition was then issued for notice to V. and all persons concerned to prove their claims for loss by a day named. The monition was duly published but was not personally served on V. in the Massachusetts District. The court made an order enjoining V. and all other persons from suing the corporation

---

[1] No. 8 is entitled in the opinion of the court " Henry Morrison, Petitioner, *v.* The District Court of the United States for the Southern District of New York, and the Honorable Addison Brown, Judge of the said Court. Petition for a writ of mandamus." No. 9 is entitled in the opinion " Henry Morrison, Petitioner, *v.* The District Court of the United States for the District of Massachusetts and the Honorable Thomas L. Nelson, Judge of the said Court. Petition for a writ of prohibition."

or the D. in respect of any claims arising out of the collision " except in these proceedings." Afterwards, M., the master of the A. filed a libel in the District Court' for the Southern District of New York, against the corporation, the D., V., and all persons claiming damages from the collision, for apportionment of limited liability, charging the fault wholly on the D., alleging that the loss of V. was $305,000, and that of M. over $1300; and that the value of the D. was over $200,000. Under process the D. was attached, and it was served on the corporation, and V. duly appeared. On motion of the D. and the corporation the District Court in New York, on a hearing of all parties made an order vacating the process issued on the libel of M., setting aside the service thereof on the corporation, releasing the D. from the attachment, and dismissing the libel. The court held that M. had notice, before he filed his libel, of the proceedings in Massachusetts, and of the injunction order issued there. On applications by M. to this court, for a mandamus to the District Court in New York, to vacate its order and reinstate the libel of M., and for a prohibition to the District Court in Massachusetts from proceeding further on the libel filed there; *Held*,

(1) The District Court in New York dismissed the libel of M. on a hearing on the merits;

(2) If the jurisdiction of that court was in issue before it, the remedy of M. was by a direct appeal to this court, on that question, under § 5 of the act of March 3, 1891, c. 517, 26 Stat. 827;

(3) If otherwise, the remedy of M., as against the order dismissing the libel, was by an appeal to the Circuit Court of Appeals, for the Second Circuit, under § 6 of the same act;

(4) The mandamus is refused;

(5) The District Court in Massachusetts acquired prior jurisdiction of the proceedings;

(6) That court did not lose its jurisdiction by the fact that the D. subsequently went to New York;

(7) In order to sustain the proceeding it was not necessary that M. or V. should have been personally served with notice thereof within the District of Massachusetts, or that the D. should have been taken and held by the Massachusetts Court;

(8) The filing of the libel by the corporation, with the offer of a stipulation, gave jurisdiction, and no subsequent irregularity in procedure could take it away;

(9) The *ex parte* appraisement was not void;

(10) The District Court in Massachusetts can order the giving of a new or further stipulation, and, on a failure to comply with such order, can stay the further proceedings of the corporation, deny it all relief, and dismiss its libel;

(11) The provision of Rule 54 in Admiralty, for the giving of a stipulation, instead of making a transfer to a trustee, is valid, and the value involved may be judicially ascertained primarily without a hearing of the persons interested adversely.

ON the 17th of October, 1892, two applications were made to the court on behalf of Henry Morrison; the first for leave to file a petition for a writ of mandamus directed to the District Court of the United States for the Southern District of New York; the second for leave to file a petition for a writ of prohibition directed to the District Court of Massachusetts. Leave being granted, these petitions were filed, argument was had, and the petitions were both denied. The case is stated in the opinion of the court.

*Mr. Samuel B. Clarke* and *Mr. Elihu Root*, (with whom was *Mr. Harrington Putnam* on the brief,) for the petitioner in each case cited: (1) on the petition for the writ of mandamus; *Windsor* v. *McVeigh*, 93 U. S. 274; *The J. W. French*, 13 Fed. Rep. 916; *The Benefactor*, 103 U. S. 239; *Ex parte Slayton*, 105 U. S. 451; *Atkins* v. *Disintegrating Co.*, 18 Wall. 272; *Ex parte Peter Graham*, 3 Wash. C. C. 456; *Pennoyer* v. *Neff*, 95 U. S. 714; *Insurance Co.* v. *Bangs*, 103 U. S. 435; *Ex parte Russell*, 13 Wall. 664; *Ex parte United States*, 16 Wall. 699; *Ex parte Bradstreet*, 7 Pet. 634; *Ex parte Schollenberger*, 96 U. S. 369; *Ex parte Roberts*, 15 Wall. 384; *Ex parte Parker*, 120 U. S. 737; *In re Pennsylvania Co.*, 137 U. S. 451; *Osborn* v. *Bank of the United States*, 9 Wheat. 738; *United States* v. *Lee*, 106 U. S. 196; *Smith* v. *Adams*, 130 U. S. 167; *In re Pacific Railway Commission*, 32 Fed. Rep. 241; *Cohens* v. *Virginia*, 6 Wheat. 264; *Tennessee* v. *Davis*, 100 U. S. 257; *Alexandria* v. *Fairfax*, 95 U. S. 774; *Smith* v. *Woolfolk*, 115 U. S. 143; *Sabariego* v. *Maverick*, 124 U. S. 261; *Hassall* v. *Wilcox*, 130 U. S. 493; *Bradstreet* v. *Neptune Insurance Co.*, 3 Sumner, 600; *The Rio Grande*, 23 Wall. 458; *Toland* v. *Sprague*, 12 Pet. 300; *Picquet* v. *Swan*, 5 Mason, 35; *Manro* v. *Almeida*, 10 Wheat. 472; *Norwich Company* v. *Wright*, 13 Wall. 104; *Freeman* v. *Alderson*, 119 U. S. 185; *The Mamie*, 110 U. S. 742; *The City of Norwich*, 118 U. S. 468; *Ex parte Phœnix Insurance Co.*, 118 U. S. 610; *Butler* v. *Boston & Savannah Steamship Co.*, 130 U. S. 527; *In re Garnett*, 141 U. S. 1: and, (2) on the petition for a writ of prohibition; Comyn's Dig. Tits. Prohibition, Admiralty; *Anony-*

*mous,* 2 Salk. 553; *Vaughan* v. *Evans,* 8 Mod. 374; *Johnson* v. *Lee,* 5 Mod. 238; *Robinson* v. *Godsalve,* 1 Ld. Raym. 123; *Doctor James's Case,* Hobart, 17; *Rowland* v. *Hockenhulle,* 1 Ld. Raym. 698; *Mendyke* v. *Stint,* 2 Mod. 272; *Ex parte Christy,* 3 How. 292; *Ex parte Easton,* 95 U. S. 68; *In re Fassett,* 142 U. S. 479; *Marbury* v. *Madison,* 1 Cranch, 137; *Ex parte Bradley,* 7 Wall. 364; *United States* v. *Peters,* 3 Dall. 121; *The St. Lawrence,* 1 Black, 522; *Ward* v. *Chamberlain,* 2 Black, 430; *Mayor &c. of London* v. *Cox,* L. R. 2 H. L. 239; *Serjeant* v. *Dale,* 2 Q. B. D. 558; *James* v. *London & Southwestern Railway,* L. R. 7 Ex. 187; *Norwich Company* v. *Wright,* 13 Wall. 104; *Providence & N. Y. Steamship Co.* v. *Hill Manufacturing Co.,* 109 U. S. 578; *The Rio Grande,* 23 Wall. 458.

*Mr. Robert D. Benedict,* opposing the petition for a writ of mandamus, cited: *Ex parte Railway Co.,* 103 U. S. 794; *Ex parte Baltimore & Ohio Railroad,* 108 U. S. 566; *In re Pennsylvania Co.,* 137 U. S. 451; *Providence & N. Y. Steamship Co.* v. *Hill Manufacturing Co.,* 109 U. S. 578; *The City of Norwich,* 118 U. S. 468; *Norwich Co.* v. *Wright,* 13 Wall. 104; *In re Garnett,* 141 U. S. 1; *Butler* v. *Boston & Savannah Steamship Co.,* 130 U. S. 527.

*Mr. John Lowell,* with whom was *Mr. William D. Sohier,* opposing the petition for a writ of prohibition, cited: *Ex parte Gordon,* 104 U. S. 515; *Ex parte Ferry Co.,* 104 U. S. 519; *Ex parte Slayton,* 105 U. S. 451; *Smith* v. *Whitney,* 116 U. S. 167; *In re Garnett,* 141 U. S. 1; *In re Cooper,* 143 U. S. 472; *New Lamp Chimney Co.* v. *Ansonia Brass and Copper Co.,* 91 U. S. 656; *Jennings* v. *Carson,* 4 Cranch, 2; *Brown* v. *Bridge,* 106 Mass. 563; *Norwich Co.* v. *Wright,* 13 Wall. 104; *The Lottawanna,* 21 Wall. 558; *The Benefactor,* 103 U. S. 239; *The Scotland,* 105 U. S. 24; *S. C.* 118 U. S. 507; *The City of Norwich,* 118 U. S. 468; *Providence & N. Y. Steamship Co.* v. *Hill Manufacturing Co.,* 109 U. S. 578; *Butler* v. *Boston & Savannah Steamship Co.,* 130 U. S. 527; *The Cargo ex Venus,* L. R. 1 Ad. & Ecc. 50; *The Thales,* 10 Blatchford,

203; *S. C.* 3 Ben. 327; *The Mellona,* 3 W. Rob. 16; *The Margaret,* 2 Hagg. 275, n; *The Hero,* Brown. & Lush. 447; *The Corner,* Brown. & Lush. 161; *The Virgo,* 13 Blatchford, 255; *The City of Hartford,* 11 Fed. Rep. 89; *The Fairport,* 8 P. D. 48; *The Freedom,* 3 Ad. & Ecc. 495; *The Flora,* 1 Ad. & Ecc. 45; *United States* v. *Ames,* 99 U. S. 35; *The Palmyra,* 12 Wheat. 1; *The Wanata,* 95 U. S. 600; *The Steamer Webb,* 14 Wall. 406; *The City of Norwich,* 118 U. S. 468.

Mr. Justice Blatchford delivered the opinion of the court.

On the 24th of July, 1892, between 8 and 9 o'clock A.M. a collision took place between the steam yacht Alva, at anchor on Nantucket Shoals, in Vineyard Sound, and owned by William K. Vanderbilt, of the city of New York, and the freight steamship H. F. Dimock, running regularly between Boston and the city of New York, and belonging to the Metropolitan Steamship Company, a Massachusetts corporation. The collision occurred during a thick fog, and, as a consequence of it, the Alva sank.

On the 16th of August, 1892, the steamship company filed a libel and petition in the District Court of the United States for the District of Massachusetts against Vanderbilt, as owner of the Alva, in a case of limitation of liability, civil and maritime. It set forth the particulars of the collision and the sinking of the Alva, denied that there was any want of care on the part of the Dimock, and averred that the collision, and the damage occasioned thereby, were caused by the carelessness and incompetence of those in charge of the Alva, and their negligence in anchoring where they did; that the Alva was claimed to be worth over $250,000, which was greatly in excess of the value of the Dimock and the latter's freight then pending, that being less than $150,000; that the petitioner denied and contested its liability, and that of the Dimock, for any loss or damage suffered by the Alva or her owner, or by any persons on board of her, but feared that suits or libels might be brought against the petitioner, or the Dimock, and damages be claimed in excess of the value of the

Dimock and her freight then pending; that the petitioner claimed the benefit of the limitation of liability provided for in §§ 4283 and 4284, chapter 6, title 48, of the Revised Statutes of the United States; and that, if the court decided that any damage was occasioned by the negligence of the Dimock, or those in charge of her, for which the Dimock was liable, the petitioner claimed that its liability as her owner should be limited to the value of the vessel and her freight pending at the time of the collision.

The prayer of the libel and petition was (1) that the court would cause due appraisement to be had of the value of the Dimock on the 24th of July, 1892, and of her freight then pending, and would make an order for the giving of a stipulation, with securities for the payment of the same into court whenever it should be ordered; (2) that the court would issue a monition against all persons claiming damages for loss occasioned by said collision, citing them to appear before the court and make due proof of their respective claims before a day to be named in the monition; (3) that the court would designate a commissioner, before whom such claims should be presented in pursuance of the monition, to make report thereof to the court; and that the petitioner might be at liberty to contest its liability, and the liability of the Dimock, for all such loss, independently of the limitation of liability claimed; (4) that the court would make an order restraining all persons from prosecuting suits against the petitioner and the Dimock, except before such commissioner and in the proceeding thus instituted, and that if, upon the coming in of the report of the commissioner and its confirmation, it should appear that the petitioner and the Dimock were not liable for such loss, it might be so decreed; (5) that if the court should decree that any person or persons were entitled to maintain claims against the petitioner or the Dimock, on account of any loss by the collision, it would also decree that the liability of the petitioner should in no event exceed the value of the Dimock and her freight pending at the time of the collision, and that the petitioner and the vessel should be forever exempt from all further liabilities in the premises, that the moneys secured to be paid

into court, after paying costs and expenses, should be divided *pro rata* among the several claimants in proportion to the amount of their respective claims, and that in the meantime, and until the final judgment of the court, it would make an order restraining the further prosecution of any suits against the petitioner or the Dimock in respect of any such claims; and (6) for other relief.

On the 25th of August, 1892, the libel and petition was amended by adding an averment that, at the time it was filed, the Dimock was, and ever since had been, lying in the port of Boston, and within the admiralty jurisdiction and process of the District Court.

On the 16th of August, 1892, the District Court for Massachusetts issued a warrant to the marshal of the district, directing him to cause the Dimock and her pending freight to be appraised on oath by three appraisers named in the warrant, to be duly sworn. The appraisers made oath before the clerk of the court that they would appraise the vessel and her pending freight according to their best skill and judgment. On the 17th of August, 1892, the three appraisers reported to the court that, after a strict examination and careful inquiry, they estimated and appraised the Dimock at $80,000, and her freight pending at the time of the collision at $2395.33.

On the latter day the court made an order setting forth that, whereas it appeared that "due appraisement" had been had of the amount or value of the interest of the petitioner in the Dimock and her pending freight at the time alleged in the petition, and the value thereof had been found to be as stated in the report, and ordering that the petitioner give proper stipulation, with sureties, for the payment into court of the sums named, whenever the same should be ordered. On the same day, a stipulation was filed, signed by the petitioner and by two sureties, each of whom justified in the sum of $200,000, which stipulation stated that the petitioner and the two sureties, "submitting themselves to the jurisdiction of this court," bound themselves, their heirs, executors and adminiserators, jointly and severally, in the sum of $82,395.33, unto William K. Vanderbilt, owner of the Alva, and all other per-

sons claiming damages in the proceedings, that the petitioner should abide by all orders and decrees, interlocutory or final, of the court, and should pay the amount of its final decree, and all sums that the petitioner should be ordered to pay by such final decree, whether in the District Court, or any appellate court; and that, unless it should do so, the signers consented that execution should issue against them, their heirs, executors and administrators, jointly and severally, and their lands, goods and chattels, wherever found, to the value of the sum above mentioned, without further notice or delay.

On the same day, the District Court issued a monition to the marshal, commanding him to give notice to Vanderbilt and to all persons concerned, of the filing of the libel or petition, and of its substance ; to cite Vanderbilt and all persons claiming damages for any loss occasioned by said collision to appear before the court, at Boston, on or before November 25, 1892, and make due proof of their respective claims in the premises; to serve a copy of the monition on Vanderbilt, if he should be found within that district; to give further notice by advertising the same in a specified newspaper published at Boston, at least sixty days before such return day ; and to post a copy of the notice at the court house in Boston. The marshal made return, on September 2, 1892, that he had advertised the monition three times, on August 19 and 26, and September 2, in the designated newspaper, had posted a copy of it in the court house at Boston on August 19, and on the same day had given a further notice to Vanderbilt, by mailing to him an attested copy of the monition, by registered letter, to his house at Newport.

On the 17th of August, 1892, the District Court also made an order enjoining Vanderbilt and all persons claiming damages for any loss arising out of the matters and acts alleged in said libel and petition, from prosecuting any suit or suits against the libellant or petitioner, as owner of the Dimock, or against that vessel, in respect to any claim or claims arising out of said collision, "except in these proceedings." On the 20th of August, 1892, a deputy of the United States marshal for the District of Massachusetts mailed an attested copy of such

restraining order to Root & Clarke, attorneys for Vanderbilt, at New York.

On the 30th of September, 1892, Henry Morrison, who was the master of the Alva, and on board of her at the time of the collision, filed a libel in the District Court of the United States. for the Southern District of New York, against the Metropolitan Steamship Company, the Dimock, Vanderbilt, and all persons claiming damages against that company or the Dimock by reason of said collision, in a cause civil and maritime, of apportionment of limited liability pursuant to § 4284 of the Revised Statutes. The libel set forth the particulars of the collision, and averred that it was not caused by any neglect or fault of the libellant, or of any of the persons on board of and having charge of the Alva, but was wholly due to the fault of those in charge of the Dimock, in seven specified particulars. It averred that by the collision the Alva and the personal effects of Vanderbilt on board of her were totally lost; that Vanderbilt had sold the wreck at public auction for $3500; that immediately prior to the collision the yacht was of the value, at least, of $300,000, and the personal effects of Vanderbilt so lost were of the value of more than $5000; that Vanderbilt had notified the steamship company that he would hold it responsible for the loss and damage so suffered by him; that at the time of the collision the libellant had on board of the Alva personal effects of his own, of which a list was given, amounting in value to over $1300, which were wholly lost; that divers other persons had suffered losses and destruction of property on board of the Alva by such collision; that all of such loss and damage was without the privity or knowledge of the steamship company, and by law its liability did not exceed the value of its interest in the Dimock and her freight then pending ; that the whole value of the Dimock, and her freight for the voyage she was making, was not sufficient to make compensation to the persons who suffered loss by such collision, and they were by law entitled to receive compensation from the owner of the Dimock only in proportion to their respective losses; that the value of the Dimock at the time of the collision, and at the termination of the

voyage she was then making, exceeded $200,000, and her freight then pending exceeded $2300; that the amount to be apportioned among the several persons who so suffered loss by such collision exceeded $202,300; that the Dimock had not been libelled or arrested in any court to answer for such loss, and her owner had not theretofore been sued in that behalf; and that the Dimock was then within the Southern District of New York, and subject to the control of the court for the purposes of the proceeding.

The prayer of the libel was, that the court would proceed to establish the loss suffered in the premises by all persons who might make any claim of liability therefor against the Dimock or her owner, and would proceed in due course to ascertain the value of the Dimock and her freight then pending, and the proportionate amount of compensation for said matters which the libellant was entitled to receive from the owner of the Dimock, and to decree the payment thereof against either the Dimock or her owner, or both, as might be lawful and proper; and for further relief; that process might issue against the Dimock, and she be condemned and sold to pay said damages; and that the steamship company, Vanderbilt, and all persons claiming to have suffered loss by such collision might be cited in due form to appear and answer, and to prove their claims in that behalf.

Under process duly issued on that libel, the Dimock was attached by the marshal on September 30, 1892, in the Southern District of New York, and on the 1st of October, 1892, in that district, process of monition was duly served by him on the steamship company; and on the same day proctors for Vanderbilt duly entered their appearance for him in the suit.

On the 1st of October, 1892, on an affidavit, and on all the pleadings and proceedings, the District Court of the United States for the Southern District of New York made an order for Morrison to show cause why his libel should not be dismissed as to the Dimock and the steamship company, and the process issued against the Dimock be set aside, and the steamship company have such other or further relief as might be

just. The motion of the steamship company to that effect was heard on the papers mentioned, on additional affidavits on behalf of that company, on a copy of the record of the District Court in Massachusetts, and on affidavits on the part of the libellant; and on the 7th of October, 1892, the District Court, held by Judge Brown, made an order directing that the process issued on Morrison's libel be vacated; that the service thereof on the steamship company be set aside; that the Dimock be released and set free from the attachment; and that the libel be dismissed. The order further said: "This order is made upon the grounds and for the reasons stated in the opinion filed this day, to which reference is hereby made as a part hereof."

In the opinion of Judge Brown, so referred to, (*The H. F. Dimock*, 52 Fed. Rep. 598,) it was held that Morrison had notice, before his libel was filed, of the proceedings in the District Court in Massachusetts, and of the injunction order issued by that court on August 17, 1892. The opinion considered the contention of Morrison that the District Court in Massachusetts never acquired jurisdiction or authority to issue the restraining order, on the grounds that the Dimock had never been arrested by or surrendered to that court, nor had any stipulation been given for her proper value, as a substitution for her, under Rule 54 of this court in admiralty, and because the appraisement proceeding was *ex parte* and without any notice of it, or of the application for it, having been given, or attempted to be given, to Vanderbilt or any other creditor, and because the appraisement was for less than one-half of the value of the vessel, and that, therefore, the appraisement was not a "due appraisement," within Rule 54. The District Court in New York held that the original *ex parte* appraisement and stipulation were not a finality, incapable of subsequent inquiry or correction by the court on due application; that it was competent for the District Court in Massachusetts to order a reappraisement and further security, upon application by any creditor, showing that the previous appraisement was mistaken and inadequate, and that the duty of the appraisers had been performed inadequately; that the matter

fell within the domain of practice, to be regulated by that District Court, in the absence of any express rule of this court, as the interests of justice seemed to demand; that, as Rule 54 of this court did not in terms require any notice to creditors of the original appraisement and stipulation, the District Court was not prepared to hold that the "due appraisement," provided for by that rule, might not be, in the first instance, an *ex parte* one, to be supplemented thereafter, if unsatisfactory, by further inquiry on the application of a creditor; that the want of notice did not constitute a jurisdictional defect in the appraisement and stipulation, so as to render void the order for a monition and other subsequent steps in the cause, including the injunction against all other suits, provided for by Rule 54; that the prior proceeding in the District Court in Massachusetts was valid, and the libel of Morrison was improperly filed; and that it should be dismissed.

On the 17th of October, 1892, Morrison presented to this court a petition for a writ of mandamus directing the District Court for the Southern District of New York, and Judge Brown, notwithstanding the matters contained in the moving affidavits before that court, and notwithstanding the proceedings in the District Court of the United States in Massachusetts, to vacate the order of October 7, 1892, and to reinstate Morrison's libel and proceed thereon according to law. Accompanying the petition are copies of all the papers in the suit of Morrison and of all the papers constituting the record in the suit in the District Court in Massachusetts. Judge Brown has made return to the order to show cause, and the case has been orally argued here by the counsel for both parties, and full briefs have been submitted to this court.

The District Court in New York disposed of the question before it on the merits, and dismissed the libel. Although in its opinion the court said that Morrison's libel was "improperly filed," yet the court did not refuse jurisdiction of that libel. On the contrary, it said that the proceeding by Morrison to limit liability was in accordance with the provisions of § 4284 of the Revised Statutes. What it did was to hold that the libel must be dismissed on the ground that there was a

valid defence to it, in the prior proceedings instituted in the District Court for Massachusetts, which court had full jurisdiction of the cause. What it said was that Morrison's libel was improperly filed, because it was filed in violation of a valid restraining order, issued on the 17th of August, 1892, by the District Court for Massachusetts.

The District Court in New York having dismissed the libel out of court, on a hearing of the case on the merits, we are now asked to direct it to vacate its order of dismissal, and to reinstate the cause, and to proceed upon the libel. This is in effect asking us to direct the District Court to decide in a particular way the matter heard before it, which is never the office of a mandamus. *Ex parte Morgan*, 114 U. S. 174; *Ex parte Brown*, 116 U. S. 401.

Moreover, the present attempt is one to use a mandamus as a writ of error, which cannot be done. *Ex parte Railway Co.*, 103 U. S. 794, 796; *Ex parte Baltimore & Ohio Railroad*, 108 U. S. 566; *In re Pennsylvania Co.*, 137 U. S. 451, 453.

In addition to this, a mandamus is never granted where the party asking it has another remedy. *In re Pennsylvania Co., supra.* In the present case, it is claimed by Morrison that the jurisdiction of the District Court in New York was in issue before that court. If so, the remedy of Morrison was by an appeal from the District Court directly to this court, on the question of jurisdiction, under § 5 of the act of March 3, 1891, c. 517, 26 Stat. 827. If the question of the jurisdiction of the District Court was not in issue before that court, then the remedy of Morrison, as against the order of the District Court dismissing his libel, was by an appeal to the Circuit Court of Appeals for the Second Circuit, under § 6 of the same act.

For the foregoing reasons, the prayer of the petition for a mandamus in No. 8, Original, must be denied.

In No. 9, Original, the question involved is as to the validity of the proceedings in the District Court for Massachusetts. Morrison applies to this court for a writ of prohibition to the District Court for Massachusetts, from proceeding further upon the libel and petition filed in that court by the Metropolitan Steamship Company. The District Judge has made a return

to the order to show cause, issued on the petition for prohibition, setting forth in full the proceedings before recited, and stating that due appraisement was made of the Dimock and her freight, "according to the usual course and practice of the said District Court in such cases, by three persons known to me to be persons of integrity, and of skill and experience in such matters; and such appraisement was duly made and returned."

It is urged for Morrison that, in the libel and petition filed by the Metropolitan Steamship Company in the District Court for Massachusetts, the company did not ask for the appointment of a trustee, or convey, or offer to convey, its interest in the Dimock and her pending freight to a trustee, pursuant to § 4285 of the Revised Statutes of the United States; that it did not allege, in its original libel and petition, that the vessel was within the District of Massachusetts, nor pray any process against her, nor in any way surrender her to the custody of the said District Court; that it did not offer, in case the court should adjudge the company to be liable to any extent for the collision, to pay the value of the vessel and freight into court for distribution; that it did not allege that any person except Vanderbilt suffered loss by the collision; that the order issued by the District Court in Massachusetts, on August 17, 1892, was not a mere temporary restraining order, to last only until a hearing could be had, but was an absolute injunction, which contained no provision for a hearing of the damage claimants on the matter thereof, and did not purport to be made on notice and an opportunity to be heard, given to any person interested adversely to the steamship company; that the amendment to the libel was not made until August 27, 1892; that the Dimock was never attached by any process issued out of the District Court for Massachusetts, and that court never took her into its custody or assumed control of her; that it appeared by affidavit that, after the libel in Massachusetts was amended, and before Morrison's libel was filed in the Southern District of New York, the Dimock departed from the District of Massachusetts and was no longer in that district or subject to the control of the court for that district, or within the reach of the process of that court, such departure being without any

obligation to return the vessel into that district, and without any leave of that court obtained or sought; that the only thing left within the Massachusetts district to be divided among damage claimants, and subject to be disposed of by the decree of the court for that district, in the proceeding there pending, was the stipulation so given; that no notice of the appraisement proceedings, or of the stipulation proceedings, or of the injunction proceedings, was required by the court to be given to any damage claimant, and neither Morrison nor any other damage claimant had in fact any notice thereof or any opportunity to be heard thereon; that neither Morrison, nor Vanderbilt nor any damage claimant had been served personally with process in the Massachusetts district, or had entered any appearance in the Massachusetts court; that Vanderbilt had received a copy of the monition and of the injunction order, but not within the district of Massachusetts, and not until after August 17, 1892; and that Morrison had not been served with any paper in the Massachusetts proceedings, either within or without the Massachusetts district.

It is further contended, that Morrison and Vanderbilt have been deprived of their remedy against the Dimock and her owners, and are confined to a proceeding to obtain a share of the amount mentioned in the stipulation; that no court has power to give relief beyond a share in that amount, because the Dimock departed from the jurisdiction of the District Court for Massachusetts, and her owners never submitted themselves to the jurisdiction of that court by any offer to pay any sum in excess of that amount; that that result had been accomplished by a proceeding wholly *ex parte*, without actual or constructive notice and without any opportunity for a hearing, on the part of Morrison, or Vanderbilt, or any other person adversely interested; that the appraisement, stipulation and injunction proceedings in the Massachusetts court, having been taken without any notice or opportunity to be heard given to the damage sufferers, were wholly without effect upon the rights of the latter, and did not destroy Morrison's capacity to sue, and did not discharge the steamship company or the Dimock from liability to be

sued; that Morrison acquired by the collision a right to re-
cover damages to some extent against the company owning
the Dimock, personally, in any District Court which could
obtain personal jurisdiction of that company; that he acquired
a right also to recover damages to some extent against the
vessel, in any District Court which could obtain jurisdiction
*in rem* against her; that his right against the vessel is not a
right of action merely, but is a *jus in re* and a property inter-
est in her, of which he cannot be deprived without due process
of law; that the limited liability act did not take away or
affect any such rights *ex proprio vigore*, as an exercise of the
legislative power of the United States, but left such rights to
be limited and qualified judicially by the courts; that after
the collision, and before the company filed its libel in Massa-
chusetts, Morrison, by virtue of that statute, had a right to
prosecute an apportionment suit in any District Court which
could acquire jurisdiction *in rem* of the Dimock, and *in per-
sonam* of her owner, and of all known damage claimants, and
the further right to have any such court adjudicate upon the
questions (1) whether the company and the Dimock were
liable to any extent, that is to say, whether the collision was
caused by fault on the part of the Dimock; (2) if so, how
much was the value of the company's interest in the Dimock
and her freight for the voyage; (3) whether the aggregate
losses of all the damage sufferers exceeded that value; and (4)
if they did, how, or in what proportions, the amount of that
value ought to be divided among the sufferers; and that the
only ways in which the Massachusetts proceedings could have
affected such statutory right of Morrison were (1) by destroy-
ing his personal capacity to sue; (2) by releasing the company
and the Dimock from liability to be sued; and (3) by confer-
ring upon the court in Massachusetts exclusive jurisdiction to
determine those four questions, which were presented alike by
the company's libel and by Morrison's libel.

It is contended, also, that the "due process of law," guar-
anteed to every person by Article 5 of the Amendments to the
Constitution of the United States, implies, with reference to
proceedings under the judicial power of the United States,

notice of some kind, and opportunity to be heard, not only as a requisite, but as a prerequisite; that the rights of the damage claimants had never been submitted or subjected in any form to the Massachusetts Court; that proceedings in court, of which the persons whose rights purported to be affected thereby had no actual or constructive notice, and in which they had no opportunity to be heard, were ineffective and were not judicial proceedings; that it could not be said that an opportunity to be heard would necessarily, and as matter of law, have been of no advantage to the damage claimants, for they might have convinced the court (1) that the appraisement ought to have been made on sworn testimony, with an opportunity to both sides to produce and cross-examine witnesses; or (2) that the experts selected were not competent or were not impartial; or (3) that the appraisers' report ought to have been rejected, because it did not show the plans on which they proceeded, or as of what time the value of the Dimock was taken, or because the appraisers did not personally examine her; or (4) that the stipulation should have been broad enough to cover not merely what the appraisers estimated to be the value of the company's interest in the Dimock and her freight, but also what the damage claimants asserted the value of such interest to be, so that, if, on final hearing, the issue tendered in the company's libel and petition as to such value was determined in favor of the damage claimants, the court would have some means of compelling the company to pay the adjudicated value into court for distribution; or (5) that the sureties on the stipulation were insufficient; or (6) the court might have been convinced that, for the reasons above stated, no injunction ought to issue, or else, only on condition that the company bound itself with sureties, to pay into court the value of its vessel and freight, as finally adjudicated, or that the rights of the parties could be more conveniently and justly determined by permitting the damage claimants to assert their claims in their own way, and allowing the steamship company to set up the apportionment proceedings as a plea, or that no injunction ought to issue until the value of the vessel and freight had been adjudicated, and paid into court, or secured to be paid.

. It is further urged, that the proceedings in Massachusetts were not, as matter of law, equivalent to a transfer of the Dimock and her freight by the company to a trustee under § 4285 of the Revised Statutes; that they were very far from being an equivalent in fact; that there is nothing in the statute which authorizes the owner of a vessel, at his option, either to transfer his interest in the vessel and freight to a trustee, or to pay into court the value thereof as determined by an *ex parte* appraisement, or which declares that it shall be a sufficient compliance with the statute on the part of the owner if he pays or secures to be paid into court the value so appraised, or which provides that, after such payment all suits and proceedings against the owner shall cease; and that the act leaves the creation of a substitute in lieu of a transfer to a trustee, to a court which proceeds judicially.

It is further contended, that the rights of the damage claimants against the company and the Dimock, arising out of the collision, remained precisely as they were before the company filed its libel and petition in Massachusetts; that those rights were never transferred from the company and the vessel to the fund represented by the stipulation; that said fund cannot be regarded as the fund to be apportioned among the damage claimants, as it had never been adjudicated or judicially established to be such; that, if Morrison's right to proceed against the company and the vessel in the Southern District of New York had been taken away or suspended by the proceeding in Massachusetts, it must be for some other reason than (1) that the court in Massachusetts had adjudicated that damage claimants ought to be enjoined from proceeding in any other court; or (2) that such claimants had been incapacitated or rendered personally incompetent to sue; or (3) that the company and the Dimock had been released and discharged from liability to be sued; and that the only other way in which Morrison's right to proceed in New York could have been affected was that the jurisdiction of the court in Massachusetts over the subject-matter had somehow become exclusive, so that Morrison could proceed against the company and the vessel only in that forum.

. It is also contended, that the court in Massachusetts was not

competent to adjudicate the question whether or not the collision was caused by fault on the part of the Dimock, because it did not acquire personal jurisdiction of one or more of the damage claimants or jurisdiction *in rem* of the Dimock; that the fund represented by the stipulation had not been judicially substituted for the Dimock, and she had not been discharged from liability for the collision; that, as she still remained liable for it, nothing but possession and control of her would authorize any court to pronounce a judgment *in rem* as to her liability; that the court in Massachusetts had never actually assumed possession and control of her by the officers of the court, by seizure or otherwise, or jurisdiction of her; that, whatever jurisdiction that court acquired of her by her having been within the district when the company's libel and petition was filed, was lost, and all the rights of the company arising therefrom were abandoned by the company's having taken the Dimock, before the return day of the monition, out of the district, to the port of New York, without leave of the court or procuring any release or discharge of her, or entering into any obligation to bring her back; that the court in Massachusetts never acquired personal jurisdiction over Morrison or any other damage claimant; that, there having been no voluntary appearance of any damage claimant, service of process within the Massachusetts district was essential; and that no process had been served on Morrison or Vanderbilt within that district.

It is further contended, that the court in Massachusetts did not acquire jurisdiction to determine any of the other questions presented by the two libels; that what the steamship company ought to have done was to make in its libel an unconditional offer, substantially in the terms of the statute, to pay into court for partition among the damage sufferers whatever the court should determine was the value of the company's interest in the Dimock and her freight; that the only offer which could be implied from the libel was one to pay or secure to be paid the amount at which the court might cause the value of the vessel and her freight to be duly appraised; that such offer was insufficient, because it did not mean the amount which the court should adjudicate, after hearing the parties adversely

interested, to be such value; that such offer of the company having been complied with to the expressed satisfaction of the court, no power was left to that court to compel the company to pay anything more than the appraised amount, even if the court should find, on the proofs, that the value of the Dimock and her freight was greater; that, as the vessel had been taken out of the Massachusetts district, there was nothing left within the reach or control of the Massachusetts court, except the stipulation for an amount which Morrison and Vanderbilt allege was less than one-half the true amount; and that, even if they should appear in the Massachusetts court and establish by proof that the liability of the company was not less than $200,000, that court could do nothing against the will of the company.

We are of opinion that none of the views above stated are sufficient to show that this is a proper case for a writ of prohibition. The only question involved is that of the jurisdiction of the District Court of Massachusetts. *Ex parte Gordon,* 104 U. S. 515; *Ex parte Ferry Company,* 104 U. S. 519; *Ex parte Slayton,* 105 U. S. 451; *Smith* v. *Whitney,* 116 U. S. 167; *In re Garnett,* 141 U. S. 1; *In re Cooper,* 143 U. S. 472, 495.

Under Rule 57 in admiralty, prescribed by this court, (130 U. S. 705,) the Dimock not having been libelled to answer for the loss resulting from the collision, and no suit therefor having been commenced against her owner, the proceedings were instituted lawfully in the District Court in Massachusetts, that being the district in which the vessel was at the time the proceedings were instituted, and she being at that time subject to the control of that court for the purposes of the case, as provided by Rule 54, 137 U. S. 711, and Rules 55 and 56, 13 Wall. 13.

As to the contention that, in order to retain jurisdiction, the Massachusetts court should have kept possession of the Dimock until Morrison or Vanderbilt, or both of them, should have chosen to appear in the cause, and that, by allowing her to go to New York, in the ordinary course of her business, after the stipulation had been given, the District Court in

Massachusetts lost such jurisdiction as it had acquired, there are several sufficient answers:

(1) The proceeding to limit liability is not an action against the vessel and her freight, except when they are surrendered to a trustee, but is an equitable action.

(2) It was not necessary, in order to sustain the proceeding for limiting liability, that Morrison or Vanderbilt should have been personally served with notice thereof within the district of Massachusetts, or that the Dimock should have been taken and held by the court. The decisions of this court have established the power of Congress to pass the statute, and of the courts of admiralty jurisdiction to enforce it; and its enforcement would be impracticable under the restrictions which Morrison seeks to impose. *Norwich Co.* v. *Wright*, 13 Wall. 104; *The Benefactor*, 103 U. S. 239; *Providence and New York Steamship Co.* v. *Hill Mfg. Co.*, 109 U. S. 578; *The City of Norwich*, 118 U. S. 468; *The Scotland*, 118 U. S. 507; *Butler* v. *Boston and Savannah Steamship Co.*, 130 U. S. 527.

(3) The filing of the libel and petition of the steamship company, with the offer to give a stipulation, conferred jurisdiction upon the court, and no subsequent irregularity in procedure could take away such jurisdiction.

(4) Although some prior notice of the holding of the appraisement might very well have been served upon Vanderbilt, even if he was out of the jurisdiction of the Massachusetts court, he having been named in the libel and petition as a respondent, yet the appraisement *ex parte* was not void, because Rule 54 does not require prior notice of the appraisement to be given to any one, and only requires a monition to be issued after a stipulation has been given or a transfer has been made to a trustee.

(5) The making of the appraisement *ex parte*, and the taking of the stipulation thereupon, were, at most, an irregularity which the District Court could correct. *The Thales*, 3 Benedict, 327, 330, and 10 Blatchford, 203; *The Benefactor*, 103 U. S. 239, 247. The stipulation stands in the place of the vessel and her freight, leaving to the court its usual power to act, on proper application, in respect to giving a new or further

stipulation. *The Wanata*, 95 U. S. 600, 611; *United States* v. *Ames*, 99 U. S. 35, 36; *The City of Norwich*, 118 U. S. 468, 489. The District Court for Massachusetts has the whole matter within its control, for the steamship company, by its libel and petition, has submitted itself to the jurisdiction of that court; and if it should fail to comply with a future order of that court in respect to giving a new or further stipulation, on a further appraisement, that court could stay its further proceedings, deny it all relief, and dismiss its libel and petition.

Section 4285 of the Revised Statutes provides that it shall be deemed a sufficient compliance on the part of the owner of a vessel with the requirements of the statute relating to his liability for loss, if he shall transfer his interest in the vessel and freight for the benefit of the claimants to a trustee, and that, after such transfer, all claims and proceedings against the owner shall cease. Rule 54 of the rules in admiralty prescribed by this court provides that when a libel or petition is filed in the proper District Court, as provided by Rule 57, claiming a limitation of liability and praying proper relief in that behalf, the court, having caused due appraisement to be had, shall make an order for the payment of the amount into court, or for the giving of a stipulation, with sureties, to pay the same into court whenever ordered, or, if the owner so elects, make an order, without such appraisement, for the transfer by the owner of his interest in the vessel and freight to a trustee to be appointed by the court, and upon compliance with such order, issue a monition notifying all persons claiming damages to make proof of their claims, and also make an order restraining the further prosecution of all suits against the owner in respect of any such claims.

The validity of the provision for a stipulation has been upheld by this court in *Providence and New York Steamship Co.* v. *Hill Mfg. Co.*, 109 U. S. 578, 600, in which it said: "The operation of the act in this behalf cannot be regarded as confined to cases of actual 'transfer,' (which is merely allowed as a sufficient compliance with the law,) but must be regarded, when we consider its reason and equity and the whole scope of its provisions, as extending to cases in which what is re-

quired and done is tantamount to such transfer; as, where the value of the owners' interest is paid into court, or secured by stipulation and placed under its control, for the benefit of the parties interested." To the same effect, see *The City of Norwich*, 118 U. S. 468, 502.

In fact, it is stated in the brief for Morrison, that his counsel do not doubt that the operation of the limited liability act cannot be regarded as confined to cases of actual transfer to a trustee, but must be regarded as extending to cases in which what is done is tantamount to such transfer; as, when the value of the owner's interest is paid into court, or secured by stipulation, and placed under its control for the benefit of the parties interested. But what they contend for is, that the value of such interest cannot be regarded as paid into court, or secured by stipulation, until such value has been judicially ascertained, after a hearing of the persons interested, and that only such a judicial ascertainment is equivalent to a transfer of the vessel and her freight to a trustee.

As the District Court for Massachusetts has jurisdiction in the premises, we will not prohibit it from proceeding in the exercise of such jurisdiction. A writ of prohibition will be issued only in case of a want of jurisdiction either of the parties or of the subject-matter of the proceeding. *In re Fassett*, 142 U. S. 479, 486.

The foregoing views sufficiently dispose of the points urged in behalf of the writ.

*Both writs denied.*