## FEDERAL TRADE COMMISSION *v.* A. P. W. PAPER CO., INC.

No. 320.   Argued February 4, 1946.—Decided May 6, 1946.

*Solicitor General McGrath* argued the cause for petitioner. With him on the brief were *Assistant Attorney General Berge, Charles H. Weston* and *W. T. Kelley.*

*Edward H. Green* argued the cause for respondent. With him on the brief was *E. H. Sykes.*

*Kenneth Perry* and *Hector M. Holmes* filed a brief for Johnson & Johnson, as *amicus curiae,* urging affirmance.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Respondent manufactures and sells toilet tissues and paper towels in interstate commerce. On each package or roll of one brand are a Greek red cross and the words "Red Cross". Respondent registered the words "Red Cross" and the Red Cross symbol as a trade mark; and it features them in its advertisements and on its letterheads.

By § 4 of the American Red Cross Act of January 5, 1905, 33 Stat. 600, 36 U. S. C. § 4, it was made unlawful "for any person or corporation, other than the Red Cross

of America, not now lawfully entitled to use the sign of the Red Cross, hereafter to use such sign or any insignia colored in imitation thereof for the purposes of trade or as an advertisement to induce the sale of any article whatsoever." That section was amended by the Act of June 23, 1910, 36 Stat. 604, 36 U. S. C. § 4. Sec. 4 of that Act made unlawful the use of the Greek red cross on a white ground or the words "Red Cross" for the purpose of trade or as an advertisement "to induce the sale of any article" or "for any business or charitable purpose" by any person other than the American National Red Cross [1] or its duly authorized employees and agents or the sanitary and hospital authorities of the army and navy. It contained, however, a proviso which reads as follows: "That no person, corporation, or association that actually used or whose assignor actually used the said emblem, sign, insignia, or words for any lawful purpose prior to January fifth, nineteen hundred and five, shall be deemed forbidden by this Act to continue the use thereof for the same purpose and for the same class of goods."

Petitioner's use of the trade name and emblem antedate January 5, 1905.[2] But in 1942 the Federal Trade Commis-

---

[1] The Red Cross organization had its origin in a treaty drafted at the Geneva Convention in 1864 and acceded to by the United States in 1882. 22 Stat. 940. The American Association of the Red Cross was incorporated in 1881 under the laws of the District of Columbia. It was reincorporated in 1893 under the laws of the District of Columbia as the American National Red Cross. On June 6, 1900, it was incorporated under the same name by Act of Congress (31 Stat. 277) and was reincorporated January 5, 1905. 33 Stat. 599. From the time of its first incorporation in 1881 down to the present, it has used the words "Red Cross" as a part of its name and has also used the emblem adopted by the 1864 Geneva Convention, the Greek red cross on a white ground.

[2] Toilet tissues were marketed by petitioner under that trade name and emblem since 1897 and paper towels since 1933. The trade-mark

sion charged petitioner with a violation of § 5 (a) of the Federal Trade Commission Act, 38 Stat. 719, as amended 52 Stat. 111, 15 U. S. C. § 45, which makes unlawful "unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce."

A hearing was had, findings were made and a cease and desist order was issued. The Commission found that "the use by respondent of the words 'Red Cross' and of the mark of the Greek red cross to designate its products has the tendency and capacity to mislead and deceive a substantial portion of the purchasing public, in that such name and mark represent or imply that respondent's products are sponsored, endorsed, or approved by the Red Cross; that the Red Cross is financially interested in the sale of the products; that the products are used by the Red Cross; that the products are manufactured in accordance with sanitary standards set up by the Red Cross; or that there is some other connection between the products and the Red Cross. Not only are these, in the opinion of the Commission, reasonable inferences to be drawn from the use of the name and mark, but the record affirmatively shows that the name and mark are in fact so understood and interpreted by many members of the public." The Commission also found that statements on respondent's products that they are made by respondent and that the name and mark are registered "do not serve to correct the erroneous and misleading impression created through the use of the trade name and mark." The Commission entered an order which, among other things, forbade respondent from using the words "Red Cross" to

was first registered in the Patent Office in 1911 and was extended to cover paper towels in 1934.

The Commission made no finding as to whether the paper towels were of the same class of goods as the toilet tissue within the meaning of the proviso to § 4 of the 1910 Act.

describe its products and from displaying the Greek red cross on them.[3]   38 F. T. C. 1.

On a petition for review, the Circuit Court of Appeals, by a divided vote, reversed the order of the Commission. 149 F. 2d 424.   It held that the order went beyond permissible limits in forbidding any use of the words and the mark.   It remanded the case to the Commission for the formulation of a new order which, though not forbidding the use of the words and the symbol, might require statements which would avoid any inference that the goods were sponsored or approved or in any way connected with the American National Red Cross.   The case is here on petition for a writ of certiorari which we granted because of the importance of the problem in the administration of the Federal Trade Commission Act.

There is no suggestion that the pre-1905 use of the words and the symbol was an unlawful one within the meaning of either the 1905 or the 1910 Act.   Nor has the Commission found that respondent has engaged in any fraudulent activity or made any untruthful statements in connection with its use of the words and the symbol. Therefore this is not a case where the words and symbols

---

[3] It ordered respondent to cease and desist from

"1. Using the words 'Red Cross' or any abbreviation or simulation thereof, either alone or in combination or connection with any other word or words, to designate, describe, or refer to respondent's products.

"2. Using or displaying on respondent's products or in any advertisement of such products the mark of a Greek red cross, or any other mark, emblem, sign, or insignia simulating or resembling such cross.

"3. Representing in any manner or by any means, directly or by implication, that respondent's products are sponsored, endorsed, or approved by the Red Cross; that the Red Cross is financially interested in the sale of said products; that said products are used by the Red Cross; that said products are manufactured in accordance with sanitary standards set up by the Red Cross; or that there is any other connection between said products and the Red Cross."

were either adopted or used pursuant to a fraudulent design, aimed at creating the impression that these products were sponsored by or otherwise carried the imprimatur of the Red Cross.   Hence, here, as in *Jacob Siegel Co. v. Federal Trade Commission,* 327 U. S. 608, we have no problem involving the power of the Commission to uproot a fraudulent scheme in its entirety.   But it is argued that however lawful the earlier use may have been, it cannot survive a finding by the Commission that the use constitutes an unfair or deceptive act or practice in commerce. It is pointed out that the 1938 amendment to the Federal Trade Commission Act gave the Commission power to protect consumers, as well as competitors, against unfair or deceptive practices.[4]   It is said that there are no exceptions to that broad power and none should be implied from the Red Cross Act of 1910.   The latter Act, it is said, confers no general rights but only a limited immunity and should not be construed as exempting pre-1905 users of the name and emblem from regulatory legislation of general application which Congress may from time to time enact for the protection of the public.   It is also argued that by the Geneva Convention of 1929, which was ratified

---

[4] In *Federal Trade Commission* v. *Raladam Co.,* 283 U. S. 643, 647–648, the Court had ruled that, "The paramount aim of the act is the protection of the public from the evils likely to result from the destruction of competition or the restriction of it in a substantial degree, and this presupposes the existence of some substantial competition to be affected, since the public is not concerned in the maintenance of competition which itself is without real substance."   The 1938 amendment to § 5 of the Federal Trade Commission Act was designed to make "the consumer, who may be injured by an unfair trade practice, of equal concern, before the law, with the merchant or manufacturer injured by the unfair methods of a dishonest competitor." H. Rep. No. 1613, 75th Cong., 1st Sess., p. 3.   And see S. Rep. No. 221, 75th Cong., 1st Sess., p. 3.

by the United States [5] in 1932, the United States agreed to prohibit the use by private persons of the name and the symbol and that the Red Cross Act and the Federal Trade Commission Act should not be construed in favor of conduct which this nation is under international obligation to terminate.

We agree, however, with the Circuit Court of Appeals. It is clear that the 1910 Act granted, or at least recognized, the right of pre-1905 users to continue the use of the words and the symbol.[6] The House Report stated that the Act as amended "will permit the use of the symbol by . . . such persons, corporations, and associations as actually used the emblem prior to January 5, 1905, for the purposes

---

[5] 47 Stat. 2074. Article 28 provides in part (47 Stat. 2092):

"The Governments of the High Contracting Parties whose legislation may not now be adequate shall take or shall recommend to their legislatures such measures as may be necessary at all times:

"a) to prevent the use by private persons or by societies other than those upon which this Convention confers the right thereto, of the emblem or of the name of the Red Cross or Geneva Cross, as well as any other sign or designation constituting an imitation thereof, whether for commercial or other purposes;

.        .        .        .        .

"The prohibition mentioned in subparagraph a) of the use of signs or designations constituting an imitation of the emblem or designation of the Red Cross or Geneva Cross, . . . shall take effect from the time set in each act of legislation and at the latest five years after this Convention goes into effect. After such going into effect it shall be unlawful to take out a trademark or commercial label contrary to such prohibitions."

[6] The manager of the bill which became the 1905 Act stated on the floor of the House during the debate that it would not "interfere with any lawful right now existing." 39 Cong. Rec. 406.

Judge Learned Hand, speaking of the 1910 Act in Loonen v. Deitsch, 189 F. 487, 492, stated: "Whatever may have been the policy before, Congress has now definitely declared in the proviso of the latter act that it would permit such marks if they antedated 1905. Congress had power so to legalize the use of it; the question of public policy was for it and for it alone, and it is now finally closed."

for which they were so entitled to use it and for the same class of goods. The section, as so amended, grants to the American National Red Cross the fullest protection it is possible to afford it by congressional enactment and at the same time amply protects the concerns possessing vested property rights in the emblem." H. Rep. No. 1256, 61st Cong., 2d Sess., pp. 2–3. It is apparent from the terms of the 1905 Act and the 1910 Act [7] that Congress was concerned not only with protecting the Red Cross against pretenders but also with protecting the public against the false impression that goods purchased were the products of the Red Cross or were sponsored by it. Congress, however, did not go the full distance. It preserved the right of earlier, good faith users to continue the use of the words and the symbol. It may have concluded that the mark which had been acquired was a valuable business asset

---

[7] As we have already noted, the 1905 Act made it unlawful "for any person or corporation, other than the Red Cross of America, not now lawfully entitled to use the sign of the Red Cross, hereafter to use such sign or any insignia colored in imitation thereof for the purposes of trade or as an advertisement to induce the sale of any article whatsoever."

And § 4 of the 1910 Act, which we have already summarized, provided:

"It shall be unlawful for any person, corporation, or association other than the American National Red Cross and its duly authorized employees and agents and the army and navy sanitary and hospital authorities of the United States for the purpose of trade or as an advertisement to induce the sale of any article whatsoever or for any business or charitable purpose to use within the territory of the United States of America and its exterior possessions the emblem of the Greek Red Cross on a white ground, or any sign or insignia made or colored in imitation thereof, or of the words 'Red Cross' or 'Geneva Cross' or any combination of these words: *Provided, however,* That no person, corporation, or association that actually used or whose assignor actually used the said emblem, sign, insignia, or words for any lawful purpose prior to January fifth, nineteen hundred and five, shall be deemed forbidden by this Act to continue the use thereof for the same purpose and for the same class of goods."

which should not be destroyed. Or it may have thought that the extent and manner of the use by the established concerns were not likely to injure the public.[8] But whatever the purpose, the fact remains that the good faith use of the mark by the pre-1905 users was intended to be preserved unimpaired.

We cannot lightly infer that this specific right was intended to be swept away under the 1938 amendment to the Federal Trade Commission Act. Repeals by implication are not favored. Yet if the order of the Commission stands, the right granted or recognized by the 1910 Act becomes a nullity. For the use of the words and the symbol by good faith pre-1905 users becomes *per se* unlawful. As the 1910 Act, like the Federal Trade Commission Act, was in part directed towards protection of the public against deceptive practices, we think the two Acts must be read *in pari materia*. The problem is to reconcile the two, if possible, and to give effect to each. We think that may be done by recognizing that while the good faith use of the words and symbols by pre-1905 users is permissible, the Commission may require the addition of language which removes any misleading inference that the

---

[8] Judge Learned Hand in *Loonen v. Deitsch, supra,* note 6, p. 489, stated:

> "Does the mark actually mean that the society is in any way concerned with the manufacture of the goods? I think not. We have become familiar with it in the past for many other uses than that of the society, though happily such uses will now slowly disappear. It had been used on hospital ambulances, upon medicaments, upon doctors' motor cars, upon barber shops, upon laundries, and for military field service not connected with the Red Cross Society. In short, until the legislation of 1905 (Act Jan. 5, 1905, c. 23, 33 Stat. 599 [U. S. Comp. St. Supp. 1909, p. 1038]), it had been quite instinctively adopted for many uses which were congruous with the chief objects of the society, but which did not indicate that the society had anything to do with them, or certainly with the frequency of the use ceased to do so. Finally, Congress has clearly recognized that fact by permitting all those who prior to 1905 had used the mark lawfully, to continue."

products are in fact sponsored, approved, or in any manner associated with the American National Red Cross.

We need comment only briefly on the Geneva Convention of 1929, which was ratified by the United States in 1932.[9] The undertaking "to prevent the use by private persons" of the words or symbol is a matter for the executive and legislative departments. The problem has been before the Congress in recent years.[10] No action has yet been taken. But we can find in that inaction no basis for concluding that the rights of good faith, pre-1905 users granted or recognized by the 1910 Act are today in any way impaired. Indeed, the existence of that right was recognized as giving rise to the need for additional legislation.[11] That assumption can hardly be reconciled with the conclusion that complete relief is already accorded under the Federal Trade Commission Act.

We do not undertake to prescribe the order which the Commission should enter. The fashioning of the remedy

[9] See note 5, *supra.*

[10] In the 77th Congress a bill to eliminate over a period of years the exemption given to pre-1905 users was favorably reported by the Committee on Foreign Affairs of the House. H. Rep. 2387, 77th Cong., 2d Sess. This proposed legislation was designed to discharge the obligation of the United States under the Geneva Convention of 1929. *Id.*, pp. 1, 2, 4.

In the 78th Congress a bill passed the Senate with similar provisions. 90 Cong. Rec. 398, 401, 3656. It was reported favorably, with amendments, by the Committee on Foreign Affairs of the House. H. Rep. No. 2054, 78th Cong., 2d Sess. This proposed legislation was likewise designed to discharge the obligation of the United States under the Geneva Convention of 1929. *Id.*, pp. 4–6. And see 90 Cong. Rec. 399.

[11] See H. Rep. No. 2387, *supra,* note 10, pp. 2, 3; H. Rep. No. 2054, *supra,* note 10, pp. 4–6. In the latter Report it was, indeed, recognized "that under existing law, there are legal uses of the symbol by commercial users." p. 4.

is a matter entrusted to the Commission, which has wide latitude for judgment. *Jacob Siegel Co.* v. *Trade Commission, supra.* We only hold that under the facts of this case the Commission may not absolutely forbid the use of the words and the symbol by respondent.

*Affirmed.*

Mr. Justice Jackson took no part in the consideration or decision of this case.