**GIANT FOOD INC., Petitioner,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

No. 17269.

United States Court of Appeals
District of Columbia Circuit.

Argued April 26, 1963.

Decided June 13, 1963.

Petition for Rehearing En Banc
Denied Oct. 14, 1963.

Petition for Rehearing Before the Division Denied Oct. 14, 1963.

978

Mr. Robert F. Rolnick, Washington, D. C., with whom Messrs. Raymond R. Dickey and Bernard Gordon, Washington, D. C., were on the brief, for petitioner.

Mr. Richard Whittington Whitlock, Attorney, Federal Trade Commission, with whom Mr. James McI. Henderson, General Counsel, Federal Trade Commission, was on the brief, for respondent.

Before FAHY, BASTIAN and MCGOWAN, Circuit Judges.

McGOWAN, Circuit Judge.

This is a petition to review a Federal Trade Commission cease and desist order against allegedly false and deceptive advertising in violation of § 5 of the Federal Trade Commission Act: "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful."[1] Petitioner was ordered to cease and desist from referring to "regular price," unless petitioner had usually and regularly sold the particular product at that price "in the recent, regular course of its business;" and from referring to the "manufacturer's list price," when that list price was not the usual and customary retail selling price of the product in the area.[2]

The major issues presented by this petition are: (1) the power of the Commission to proscribe the use of "manufacturer's list price" as a deceptive advertising practice; (2) the fairness of the administrative hearing afforded to petitioner; (3) the sufficiency of the evidence to support the Commission's order; and (4) the scope of the cease and desist order.[3]

I

Giant Food Inc., a Delaware corporation, operates a chain of more than fifty retail stores in Maryland, Virginia and the District of Columbia, located primarily in the Washington Metropolitan Area. Most of the outlets are "Giant Food" Stores; some are designated "Super Giant." A "Super Giant" combines all of the attributes of a supermarket and department store. It sells food, food products, and non-food products which would normally be found in a large chain grocery; small durable consumer goods, such as housewares and electrical appliances; durable goods; and soft goods, including clothing, drugs and soaps.

In the conduct of its business, and for the purpose of inducing the public to purchase goods at its stores, Giant regularly advertises in the three major newspapers serving the Washington Metropolitan Area. Typical of the "ads" placed by Giant were the following:

"Proctor Steam & Dry Iron #10010 Reg. Price $15.95. Adv. Price $8.47."

"Regina Twin Brush Waxer #400 Reg. Price $66.00. Adv. Price $35.47."

1. 66 Stat. 632, 15 U.S.C. § 45(a)(1). The Commission is "empowered and directed," in pertinent part, "to prevent persons, partnerships, or corporations, except * * * as they are subject to the Packers and Stockyards Act, 1921, * * * from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." 66 Stat. 632, 15 U.S.C. § 45(a)(6). The petition to review lies under 38 Stat. 719, as amended, 15 U.S.C. § 45(c) and (d).

2. The Commission ordered Giant to cease and desist from:
   "(1) Using the words 'regular price,' or words of similar import, to refer to any amount which is in excess of the price at which such merchandise has been usually and regularly sold by the respondent at retail in the recent, regular course of its business; or otherwise misrepresenting the respondent's usual and customary retail selling price of such merchandise;
   "(2) Using the words 'manufacturer's list price,' 'suggested list price,' 'fac-

tory suggested retail price,' or words of similar import, to refer to any amount which is in excess of the price or prices at which such merchandise is usually and customarily sold in the trade area where the representation is made; or otherwise misrepresenting the usual and customary retail selling price or prices of such merchandise in the trade area;
   "(3) Representing in any manner that, by purchasing any of its merchandise, customers are afforded savings amounting to the difference between respondent's stated selling price and any other price used for comparison with that selling price, unless the comparative price used represents the price at which the merchandise is usually and customarily sold at retail in the trade area involved, or is the price at which such merchandise has been usually and regularly sold by respondent at retail in the recent, regular course of its business."

3. Giant challenges the jurisdiction of the Commission on the ground that it is a "packer," within the meaning of the

"Regina Twin Brush Waxer $35.47-Mfg. List $66.00."

"Sunbeam Mixmaster $24.88-Manufacturer List Price $37.95."

On February 4, 1960, the Commission issued a complaint against Giant based on this type of advertising as used in promoting the sale of small household appliances. The complaint charged that "Reg. Price," and variants thereof, represented that Giant had sold the particular product at such price "in the recent, regular course of its business," and that such representation was untrue. The complaint also charged that "Mfr. List," and variants thereof, represented that the particular product was "usually and customarily sold at retail" at such price, when in fact the represented price was "substantially in excess of" the usual and customary retail price.

Hearings were held during 1960–61. Concerning the charge of misuse of "regular price" and similar terms, an employee of Giant admitted that his company's stores had never sold the items at that price. It appeared, however, that Giant had ceased using the term soon after the Commission began investigating Giant in 1959, in accordance with a directive issued by the company to its employees not to refer to the regular price of a product unless Giant had in the recent past sold the product at that price. Giant does not now contest the finding by the Hearing Examiner, adopted by the Commission, that reference to regular prices was deceptive advertising amounting to unfair competition within the proscription of § 5.[4] As to this portion of the order, Giant challenges only the propriety of banning practices which it had stopped and which it had promised the Commission not to reinstitute.

As to "manufacturer's list price," and similar terms, Giant had neither ceased their use nor voluntarily consented to do so. The Commission called as its witnesses buyers for The Hecht Company, S. Kann Sons Company, and Woodward & Lothrop, Inc., three of the larger department stores serving the Washington Metropolitan Area. The buyers testified that their stores had never sold at list price the products which Giant advertised with the comparison of its selling price to the list price. Taking just one example, Giant advertised the Sunbeam Hand Mixer, with a list price of $21.00, for $13.97. The highest prices at which the other stores sold the same product at that time were $16.49 (Hecht), $14.97 (S. Kann), and $13.49 (Woodward & Lothrop). Additionally, the Commission produced the testimony of several consumer witnesses, all of whom testified that they understood Giant's advertising to mean that the manufacturer's list price was the price they would pay if they purchased the product elsewhere, and that, by buying at Giant, they would realize a "savings" of the difference between list price and Giant's price.

In rebuttal, Giant showed that the catalogue of the Goodyear Service Stores, which operated several stores in the Metropolitan Area, advertised at least some of the same products at prices the same as the manufacturer's list prices to which Giant referred in its advertising; that manufacturers advertised their

Packers and Stockyards Act of 1921 (42 Stat. 160, 7 U.S.C. § 191), and thus exempt from § 5. This contention has previously been made to this Court, and rejected by it. Giant Food Inc., v. F. T. C., 113 U.S.App.D.C. 227, 307 F.2d 184 (1962), cert. denied, 372 U.S. 910, 83 S.Ct. 723, 9 L.Ed.2d 718 (1963).

4. See Niresk Industries, Inc. v. F. T. C., 278 F.2d 337 (7th Cir.), cert. denied, 364 U.S. 883, 81 S.Ct. 173, 5 L.Ed.2d 104 (1960), and Bankers Securities Corp. v. F. T. C., 297 F.2d 403 (3d Cir. 1961), both enforcing orders to cease and desist using "regular price" and similar terms on the ground that the terms implied that the company involved had sold the product at that price. In the Bankers Securities case, the company unsuccessfully argued that the terms actually referred to prices charged by other stores in the area. The Commission ascribes the latter definition to "manufacturer's list price" in the instant case.

products at suggested list prices in Life Magazine, McCalls, Look Magazine, and Consumer Reports Buying Guide; and that several purchases had been made by agents of Giant in stores in the Metropolitan Area at the manufacturer's list price for the item. On this record the Trial Examiner issued the cease and desist order which, with certain modifications in language by the Commission, is the subject of this appeal.

## II

█ Giant's first major contention is that the Commission exceeded its authority by defining "manufacturer's list price" as the usual and customary retail price in the trade area where the term is used, and that the term is neither "false, misleading, nor deceptive." We do not understand the Commission to hold that use of the term "manufacturer's list price" is unlawful *per se*; rather, it is unlawful only if it is not the usual and customary retail price in the area. The use of price lists and suggested retail prices is not confined to any one industry. Although not of recent origin, it could be justifiably called a modern phenomenon of large-scale merchandising.[5] It has been used as a means of effecting unlaw-

ful resale price maintenance;[6] but it has also been justified as a means of enabling consumers to identify products and compare actual retail prices of the same product.[7] Indeed, Giant urges the latter justification in the instant case. A suggested retail price may perhaps serve as an identifying factor for comparison purposes. But, if the "[a]dvertisements * * * are capable of two meanings, one of which is false, [they] are misleading."[8] Thus, if the Commission was correct that Giant's use of "manufacturer's list price" was false and deceptive, then the order must be upheld, even though the term might have performed a different—and lawful—function.

█ There can be no doubt at this late date that advertising which is false or deceptive is within the proscription of § 5.[9] As noted above, two other courts of appeals have previously upheld Commission orders against the use of "regular price" unless the company had itself sold the product at that price.[10] Similarly, orders have been upheld against manufacturers, prohibiting pre-ticketing of products unless the product is "usually and regularly sold at retail" at the pre-ticketed price in trade areas where the representation is made.[11] The Commis-

---

5. See Alexander, Honesty and Competition: Some Problems in the Pricing of Goods, 31 Fordham L.Rev. 141 (1962); Murphy, The Ethics of Retail Price Advertising, 6 Antitrust Bull. 419 (1961); and Comment, 39 Texas L.Rev. 903 (1961).

6. See, e. g., United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed. 2d 505 (1960), and F. T. C. v. Beech-Nut Packing Co., 257 U.S. 441, 42 S. Ct. 150, 66 L.Ed. 307 (1922).

7. See Alexander, supra note 5; Murphy, supra note 5.

8. Rhodes Pharmacal Co. v. F. T. C., 208 F.2d 382, 387 (7th Cir. 1954), rev'd in part, 348 U.S. 940, 75 S.Ct. 361, 99 L.Ed. 736 (1955). The court of appeals had modified the order of the Commission. The Supreme Court vacated the modification and affirmed the order as issued by the Commission.

9. See, e. g., F. T. C. v. Standard Education Soc'y, 302 U.S. 112, 58 S.Ct. 113,

82 L.Ed. 141 (1937); Helbros Watch Co. v. F. T. C., U.S.App.D.C., 310 F.2d 868 (1962), cert. denied, 372 U.S. 976, 83 S.Ct. 1110, 10 L.Ed.2d 142 (1963); Niresk Industries, Inc. v. F. T. C., supra; and Kalwajtys v. F. T. C., 237 F.2d 654 (7th Cir. 1956), cert. denied, 352 U.S. 1025, 77 S.Ct. 591, 1 L.Ed.2d 597 (1957).

10. Niresk Industries, Inc. v. F. T. C., supra, and Bankers Securities Corp. v. F. T. C., supra. Compare L. & C. Mayers Co. v. F. T. C., 97 F.2d 365 (2d Cir. 1938), upholding an order which *prohibited the company from falsely representing itself as a "wholesaler"* of jewelry, when the alleged wholesale prices were in fact higher than normal wholesale prices.

11. Helbros Watch Co. v. F. T. C., supra: "Fictitious pricing in the form of false 'pre-ticketing' is the now widespread practice, particularly among, but by no means limited to, manufacturers, of representing, usually on the package or the article itself, a retail price substan-

sion here has determined that the use of the term "manufacturer's list price" represents to the public that that was the price at which the product was usually and customarily sold by other stores in the area. This determination was within its power, unless it was "arbitrary or clearly wrong." [12] We cannot say that it was, particularly in view of the consumers' testimony adduced at the hearing. If a manufacturer can be prevented from placing a deceptive price on its product, we see no reason to permit a retailer to make reference to a deceptive suggested price. It is immaterial that all potential buyers are not included in that class of persons who would be cajoled by Giant's use of the term. The Act was not intended to protect "sophisticates." [13]

■ Two other contentions of petitioner can be disposed of here. Giant urges that the policy behind the Automobile Information Disclosure Act,[14] which requires automobile dealers to disclose the manufacturer's suggested retail delivery price to customers, prevents the imposition of a contrary policy where small appliances are involved. We agree with the disposition made of a similar contention by the Fourth Circuit in Baltimore Luggage Co. v. F. T. C., supra, where the court reviewed the legislative history of the Act and held:

> "It is quite obvious that the Automobile Information Disclosure Act was enacted in the effort to remedy a situation peculiar to the automobile industry brought about by widespread fraudulent or deceptive practices principally indulged in by retailers. The Act does indicate that preticketing *per se* is not illegal, but the Commission does not so contend. There is nothing in this Act to indicate that fictitious or deceptive preticketing has Congressional approval." (296 F.2d at 612.)

Although this holding was in the context of a proceeding directed against a manufacturer for deceptive pre-ticketing, we believe it to be equally relevant in the circumstances of a challenged use by a retailer of deceptive references to manufacturer's list price. No contention of *per se* illegality is advanced in this case.

■ Nor can we agree with Giant that the Commission is "administratively estopped" from restricting the deceptive use of "manufacturer's list price" by virtue of a prior decision, In the Matter of Filderman Corporation, F.T.C.

---

tially higher than the actual price to the consumer. Its vice is its deception and the understandable inability of the price-conscious consumer to control his urge to make a 'good buy.'" See further, Baltimore Luggage Co. v. F. T. C., 296 F.2d 608 (4th Cir. 1961), cert. denied, 369 U.S. 860, 82 S.Ct. 949, 8 L.Ed.2d 17 (1962); Clinton Watch Co. v. F. T. C., 291 F.2d 838 (7th Cir. 1961), cert. denied, 368 U.S. 952, 82 S.Ct. 395, 7 L.Ed. 2d 386 (1962); Rayex Corp. v. F. T. C., 317 F.2d 290 (2d Cir. 1963): "We are in complete agreement with the Commission and the other Circuits that this apparently prevalent practice is not to be condoned and that such deception of the buying public should be eliminated."

12. "The meaning of advertisements or other representations to the public, and their tendency or capacity to mislead or deceive, are questions of fact to be determined by the Commission and should be upheld by a reviewing Court unless arbitrary or clearly wrong." Kalwajtys

v. F. T. C., supra, at page 656; see also A. P. W. Paper Co. v. F. T. C., 149 F.2d 424 (2d Cir. 1945), aff'd, 328 U.S. 193, 66 S.Ct. 932, 90 L.Ed. 1165 (1946); Gulf Oil Corp. v. F. T. C., 150 F.2d 106 (5th Cir. 1945).

13. "Fictitious prices are illegal even though it is obvious to the sophisticated that the price tag is only a come-on. 'The law is not made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions.'" Helbros Watch Co. v. F. T. C., supra. See F. T. C. v. Standard Education Soc'y, supra; F. T. C. v. Sterling Drug, Inc., 317 F.2d 669, (2d Cir. 1963); General Motors Corp. v. F. T. C., 114 F.2d 33 (2d Cir. 1940), cert. denied, 312 U.S. 682, 61 S.Ct. 550, 85 L.Ed. 1120 (1941).

14. 72 Stat. 325, 15 U.S.C. § 1231.

Docket No. 7572, December 30, 1959. The Commission ordered Filderman to cease advertising prices as "manufacturer's list prices" when the advertised prices were actually in excess of the list prices. The order permitted the use of correct list prices, but it cannot be read as authorizing their use in a deceptive or misleading manner, which is what is challenged here. Thus, the factual situation is significantly different. Nor can Giant claim that it relied to its detriment on the action in Filderman, since Giant was using the term in its advertising prior to the Commission's decision in that case. Finally, an administrative agency is not "bound * * * to deal with all cases at all times as it has dealt with some that seem comparable." [15]

### III

Thus, if the Commission's finding that the manufacturer's list price used by Giant was not the usual and customary retail price in the Washington Metropolitan Area is supported by substantial evidence on the record viewed as a whole, the order must be upheld.[16] Disposition of this issue also requires consideration of Giant's contention that it did not receive a fair hearing.

The evidence on which the Commission based its finding that the represented price was not the usual and customary retail price consisted of the testimony of the buyers from the large area department stores. It will be recalled that these witnesses testified that their respective stores had never sold the products at list price. Each testified on the basis of notes which had been taken while reviewing their stores' records. At the close of direct examination of the first witness, counsel for Giant requested that he be allowed to reserve the right to cross-examine until he could make further investigation into the testimony on direct. This request was denied. Counsel then proceeded to cross-examine, and, upon learning that the testimony was from notes taken in connection with an examination of the company records, requested subpoenas *duces tecum* to issue for production of the records themselves. This request was also denied, as were similar requests in the case of each of the buyer-witnesses; and Giant took an interlocutory appeal to the Commission from the denials. When the examiner denied a motion for a continuance pending the outcome of the appeal, Giant's counsel began presenting its case in defense. Subsequently, before Giant completed its case, the Commission reversed the examiner's denial of subpoenas, which were then issued to the three stores and the records sought brought before the examiner.[17]

At this point, upon further hearings, counsel for Giant refused to take the return of the subpoenas and to examine the witnesses on the basis of the records which had been brought in. The reason assigned was that the examiner had previously ruled cross-examination closed, and counsel argued that, if he were to proceed to examine the witnesses, they would be his witnesses and he would be bound by their testimony. The examiner repeatedly assured counsel that examination could proceed without regard to form and that leading questions could be asked. He also stated, as phrased by the Commission, "that there

15. F. C. C. v. WOKO, Inc., 329 U.S. 223, 228, 67 S.Ct. 213, 91 L.Ed. 204 (1946). See 2 Davis, Administrative Law § 17.07 (1958). It might be noted that the Commission has now issued another complaint against Filderman dealing with the issue as raised in this case.

16. 5 U.S.C. § 1009(e); Universal Camera Corp. v. Labor Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Helbros Watch Co. v. F. T. C., supra.

17. There was further objection by Giant when the examiner, on motion by counsel representing the three department stores, limited the reach of the subpoenas. To avoid unnecessary complication of this opinion, we merely note that the scope of the subpoenas was properly limited to information relating to the prices at which the products were sold, which was testified to on direct examination. Cost and quantity data sought by Giant were unnecessary for cross-examination of the witnesses.

984

was no basis for counsel's concern that he would be 'bound' by what the witnesses said if he called them as his own, since the case was being tried not before a jury but before an examiner whose sole interest was in an objective appraisal of the value of their testimony." Counsel, however, persisted in his refusal to go further.

Giant then moved to have the testimony of the buyer-witnesses stricken from the record because of an inadequate opportunity to cross-examine them. This motion was denied, and the hearings ended. The Commission subsequently held that the examiner was correct in denying the motion to strike the testimony.

■■ Giant had, of course, the right to cross-examine the witnesses concerning their testimony on direct examination. As indicated, counsel did cross-examine four of the five buyer-witnesses concerning the knowledge of each witness as to the material facts on which the testimony was based, albeit without the benefit of records which might well have proved to be of material aid. There can be no doubt that Giant was entitled to see the relevant records on which the testimony was based; and we can assume that accepted rules of evidence would require their production at a time when cross-examination is available.

■ However, as the Supreme Court has said, " * * * administrative agencies like the Federal Trade Commission have never been restricted by the rigid rules of evidence." [18] This is not to say that such an agency can ignore *all* rules, but only that some leeway shall be afforded. It cannot, for example, refuse to permit any cross-examination or unduly limit it.[19] Because the Commission

"is, at once, the accuser, the prosecutor, the judge and the jury," [20] it must remain alert to observe accepted standards of fairness. Reviewing courts must, therefore, be alert to ascertain that the true substance of a fair hearing is not denied to a party, bearing in mind that the inordinate delay common in administrative hearings of the sort now before us is a legitimate cause of public concern.

■ Here, the examiner refused to continue the hearings until the full Commission had an opportunity to act on the appeal. When, however, the subpoenas subsequently issued, he was willing to afford Giant all of the benefits of cross-examination, though hesitating to apply the name. The pertinent records were produced, and counsel was told that he could recall the witnesses, ask leading or any other type of questions, and not be concerned with being "bound" by their testimony. We share the Commission's bewilderment as to why the examiner "balked at using the label 'cross-examination' to describe the procedure he was allowing [Giant] to follow, when he was in fact withholding from it none of the substance of the right of cross-examination. But it is far more difficult to see why [Giant] refused to conduct such examination when the opportunity to do so was made available to it in all except name." Accordingly, Giant's contention that the buyers' testimony was not properly a part of the record fails.

■ It appears to be true, as Giant claims, that the testimony in question was the only evidence proffered by the Commission to show that the manufacturer's list price was not the usual and customary retail price in the area. Had this evidence failed, the Commission's

18. F. T. C. v. Cement Institute, 333 U.S. 683, 705–706, 68 S.Ct. 793, 92 L.Ed. 1010 (1948).

19. See § 7(c) of the Administrative Procedure Act, 5 U.S.C. § 1006(c): "Every party shall have the right to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may

be required for a full and true disclosure of the facts;" 2 Davis, Administrative Law § 14.15; Dolcin Corp. v. F. T. C., 94 U.S.App.D.C. 247, 219 F.2d 742 (1954), cert. denied, 348 U.S. 981, 75 S.Ct. 571, 99 L.Ed. 763 (1955).

20. Niresk Industries, Inc. v. F. T. C., supra, at 341.

case would have failed along with it. For the use of manufacturer's list price is not illegal *per se;* rather, it is false and deceptive only if the price is not adhered to by area retailers. The latter must be shown by substantial evidence before the use of the term will be illegal.[21]

Thus, we reach the question of whether there is substantial evidence on the whole record to support the Commission's finding that Giant's use of the term was false and deceptive. We hold that there is. It is the function of the Commission to pass upon the weight to be accorded to the evidence before it; and to make the choice, if necessary, between varying inferences which might be drawn therefrom. The possibility of drawing either of two inconsistent inferences from the evidence does not prevent the Commission from drawing one of them.[22] Courts, however, do not always agree with the Commission that an order is supported by substantial evidence. A case in point is Rayex Corp. v. F. T. C., supra, recently decided by the Court of Appeals for the Second Circuit, where enforcement was denied of an order charging false and deceptive pre-ticketing by a manufacturer of sunglasses. The evidence adduced by the Commission that the pre-ticketed price was not the "usual and customary" retail price in the area consisted of testimony by a wholesaler that he "estimated" that only 25% of the area sales were at the pre-ticketed price; evidence of only one purchase made at a price below the pre-ticketed price; and an inconclusive statement by the president of Rayex that "we

have labels that say $1.98 and we have labels which sell for $19.95."

The paucity of the record before the Second Circuit does not resemble the Commission's case against Giant. Here, there was testimony that three of the larger department store chains serving the Washington Metropolitan Area had not sold the products in question at or above the suggested list price, at least within the preceding two years. This testimony went uncontradicted.[23] Giant argues, however, that the Commission ignored the evidence that some area stores sold the products at list price. We can neither say that this evidence was ignored, nor that it belies the existence of substantial evidence to support the order. We agree with the statement in Rayex that "one or two isolated sales at less than the preticketed price is as equally probative of a valid 'sale' on the part of the dealer involved as it is of a deceptive practice." We hold, however, that evidence that the larger area retailers had not sold at the list price is sufficient to show that list price was not the "usual and customary" retail price in the area. The Commission did not have to prove that the products never, at any time or in any store, sold at the list price. See Helbros Watch Co. v. F. T. C., supra.

Giant also argues that the Commission did not prove that trade had been diverted from its competitors to itself. This is true. But this was not an essential element of the Commission's case. The complaint charged that Giant's practices deceived the public, not that it in-

21. See Rayex Corp. v. F. T. C., supra, where, in reference to the practice of false preticketing by a manufacturer, the court stated: "We are in complete agreement with the Commission and the other Circuits that this apparently prevalent practice **is** not to be condoned and that such deception of the buying public should be eliminated. The Commission nevertheless is still required to prove by substantial evidence that preticketing is being used in a proscribed manner by the particular respondent involved in any case."

22. Concerning the powers of the Commission, see Corn Products Refining Co. v. F. T. C., 324 U.S. 726, 65 S.Ct. 961, 89 L.Ed. 1320 (1945); Northern Feather Works v. F. T. C., 234 F.2d 335 (3d Cir. 1956); Bockenstette v. F. T. C., 134 F.2d 369 (10th Cir. 1943).

23. Counsel for Giant was able to show that one of the buyer witnesses had erred by several dollars in referring to the "highest price" at which his store had sold the product. The correct highest price, however, was still well below the manufacturer's list price.

jured competition. F. T. C. v. Raladam Co., 316 U.S. 149, 62 S.Ct. 966, 86 L.Ed. 1336 (1942); Koch v. F. T. C., 206 F.2d 311 (6th Cir. 1953); Parke, Austin & Lipscomb, Inc. v. F. T. C., 142 F.2d 437 (2d Cir.), cert. denied, 323 U.S. 753, 65 S.Ct. 86, 89 L.Ed. 603 (1944).

Giant urges that its advertising was not deceptive because the following legend was carried in small print at the bottom of each advertisement:

"The manufacturer's list prices referred to in this advertisement are inserted to assist you in identification of the products and to allow you to compare accurately the selling prices offered here and elsewhere. The use of the term manufacturer's list or similar terminology in our advertising is not to imply that Giant has ever sold the advertised product at such list prices, or that the products are being offered for sale generally in the area at such list prices. Many reputable national brand manufacturers issue to retailers, from time to time, suggested retail list prices that are intended to afford reasonable profits to all retailers based upon their traditional costs of marketing. Giant's employment of self-service supermarket techniques enables it ususally to sell below suggested list prices. Consumers, however, have come to recognize most brand merchandise by the list prices, rather than model numbers. Consequently Giant includes these manufacturer's list prices so that you may make simple, intelligent comparisons between our selling prices and those of others."

■ The Commission's consumer witnesses testified either that they would not normally read such an addendum to an advertisement, or that they had read it and were merely confused by it. That the disclaimer might engender confusion appears to us, as it did to the Commission, to be an understatement. The second sentence disavows any representation of the usual retail price of the product. However, the last sentence appears to assert that the prices "of others" are in fact identical with the suggested list prices. Whether a disclaimer which is in small print and set apart from the main body of an advertisement could ever correct what otherwise would be a deceptive practice, we need not decide. We hold that this particular disclaimer only added to the deceptiveness of the term as used by Giant.

## IV

■ Finally, Giant challenges the scope of the order entered against it by the Commission. First, it urges that the order against the use of "regular price" is not in the public interest, both because the term has not been employed since prior to the time the Commission's complaint was filed, and because Giant has disavowed any intent to renew its use. However, as the Seventh Circuit has stated:

"Voluntary discontinuance of an unfair trade practice does not necessarily preclude issuance of a cease and desist order. The order to desist from an abandoned unlawful practice is in the nature of a safeguard for the future. Other than the mere discontinuance at an undisclosed time of their practice relating to the guarantee of their merchandise, petitioners have shown no facts before the Commission which would require that this portion of the order be set aside." [24]

■ On the record it appears that Giant discontinued its reference to "reg-

24. Clinton Watch Co. v. F. T. C., supra, 291 F.2d at p. 841. See, further, Goodman v. F. T. C., 244 F.2d 584 (9th Cir. 1957); Dolcin Corp. v. F. T. C., supra; C. Howard Hunt Pen Co. v. F. T. C., 197 F.2d 273 (3d Cir. 1952); Dejay Stores, Inc. v. F. T. C., 200 F.2d 865 (2d Cir. 1952). See Standard Distributors, Inc. v. F. T. C., 211 F.2d 7, 13 (2d Cir. 1954): " * * * the matter of public interest [in filing a complaint after voluntary efforts have been made to remedy the practices] is one in which the discretion of the Commission is broad."

"ular price" only after it became aware that the Commission was investigating its advertising practices. That investigation, moreover, was directed to the totality of an advertising program which was possibly deceptive in its impact upon the customers. The order before us represents the Commission's effort to deal finally with the program in its entirety. The voluntary abandonment of part of the program under the circumstances shown by the record does not disable the Commission from formulating a rule of conduct for the future as broad as the derelictions of the past.

More insistently, Giant advances two reasons why the order as it stands is defectively broad. First, the order allegedly proscribes the use of truthful information furnished by suppliers. What we have already said disposes of this argument. Use of "manufacturer's list price" is prohibited only so long as it is false and deceptive. If prices to which those terms refer are usually and customarily charged in the area, then their use will be "truthful;" and such use is not forbidden by the order.

Giant further argues that the order effectively prevents any use of suggested list price, because of the indefiniteness of the words "usual and customary," and the difficulties posed in determining what prices competing retailers charge. Giant urges that the severity of the penalties for any violation of the order [25] requires a more definite guide to future conduct. The Supreme Court recognized the problem in F. T. C. v. Henry Broch & Co., 368 U.S. 360, 367–368, 82 S.Ct. 431, 435, 436, 7 L.Ed.2d 353 (1962):

"The severity of possible penalties prescribed * * * for violations of

orders which have become final underlines the necessity for fashioning orders which are, at the outset, sufficiently clear and precise to avoid raising serious questions as to their meaning and application."

This Court and other courts of appeals have upheld orders in analogous cases where the words "usual and customary" were used, as here, in relation to prices being charged at retail in a particular trade area.[26] Giant, in addition to its own sound business judgment in the periodic ascertainment of current retail pricing, is not without recourse to the Commission for advice. We adopt the following statement from the Second Circuit in Vanity Fair Paper Mills, Inc. v. F. T. C., 311 F.2d 480, 488 (1962), which suggests that both Giant and the Commission carry certain responsibilities:

"The difficulties respondent foresees in determining whether it is complying with the order seem factitious. The order contains the usual provision for the filing of a report of compliance * * * and it is scarcely likely that if respondent proposes a method of compliance which the Commission accepts, and thereafter follows it, the Commission will subsequently and without notice claim a violation entailing the civil penalties of 15 U.S.C. § [45(l)]. If at some future time respondent should desire to change to a procedure different from what it originally proposed, it need not proceed at its peril. The Commission's offices will still be open for discussion, compare F. T. C. v. National Lead Co. [352 U.S. 419, 431, 77 S.Ct. 502, 1 L.Ed.2d 438] * * *."

25. Violation of a cease and desist order is subject to a fine of up to $5,000. "Each separate violation of such an order shall be a separate offense, except that in the case of a violation through continuing failure or neglect to obey a final order of the Commission each day of continuance of such failure or neglect shall be deemed a separate offense." 15 U.S.C. § 45(l).

26. See, e. g., Helbros Watch Co. v. F. T. C., supra (pre-ticketing); Bankers Securities Corp. v. F. T. C., supra (use of "regular price"); Niresk Industries, Inc. v. F. T. C., supra (use of "regular price"); Baltimore Luggage Co. v. F. T. C., supra (pre-ticketing).

988

There being no error, the order of the Commission is affirmed and its enforcement directed.

It is so ordered.