CITICORP SAVINGS AND TRUST COMPANY, an Oklahoma Corporation, Appellant,

v.

The BANKING BOARD OF the STATE OF OKLAHOMA and R.Y. Empie, Oklahoma Bank Commissioner, Appellees.

No. 61663.

Supreme Court of Oklahoma.

July 23, 1985.

James A. McCaffrey and Joseph K. Heselton, Jr., Edmond, for appellant.

Frances C. Farzley, State Banking Dept., and Laura Ann Pringle, Oklahoma Bankers' Ass'n, Oklahoma City, for appellees.

SUMMERS, Justice.

Citicorp Savings and Trust Company is the successor to Cherokee Title and Trust Company, a pre-statehood corporation originally authorized to do banking, savings and trust business. Cherokee lay dormant for years before being revived by Citicorp. Citicorp sought to qualify for permission to engage in the savings and trust business in Oklahoma and so petitioned the Oklahoma State Banking Board. At stake is the "certificate of authority," without which one may not commence such operations. The proceedings are governed by Article III of the Oklahoma Banking Code, 6 O.S.Supp. 1982 §§ 301–313.

On December 21st, 1983 the Board heard Citicorp's application for certificate, at which time a protest was made by the Oklahoma Bankers' Association (OBA). The Board found that Citicorp had satisfied the requirements of 6 O.S.1982 Supp. § 313 for approval of an application for certificate of authority. The Board, however, denied the application because of the existence of a pending appeal by the OBA of an earlier order of the Federal Reserve Board approving acquisition of the trust company by Citicorp, Person to Person, Inc. The Board considered the issues of the appeal to be "inextricably intertwined" with the Board's consideration of the application. It's denial was "without prejudice to resubmit the application at the conclusion of the federal appeal. . . ."

We are thus asked by Citicorp to review the board's denial of certificate of authority.

There are three issues before the court:

I. Does the Board have discretion to deny issuance of Certificate under Section 301 once the applicant has satisfied the requirements of Section 313?

II. If the Board has such discretion did it act arbitrarily and capriciously in excess of its statutory authority?

III. Did the Board's action deny appellant equal protection under the Law?

I

The statutes under consideration in issue No. I are as follows:

*Section 301.*

"A. From and after the passage of the Oklahoma Banking Code no certificate of authority to engage in the banking or trust company business in this state shall be issued, and no bank or trust company shall be permitted to engage in such business within Oklahoma except on certificate issued by the Commissioner upon approval of the Board. The issuance of such certificate shall be within the sole discretion of the Board."

*Section 313.*

"B. The Board shall approve or deny the application for a certificate of authority within sixty (60) days after such application has been accepted. The Board shall approve the application if:

1. The Board shall have approved the managing officer;

2. The capital, surplus and undivided profits in the amounts set forth in the application have been fully paid in cash;

3. Bylaws attached to the application have been adopted;

4. Any conditions imposed by the Board in approving the application for authority to organize have been fulfilled; and

5. The requirements of this Code have been satisfied; provided, the Commissioner with the consent of the Board may deny the application for a certificate of authority if the bank's application for Federal Deposit Insurance or for membership in the Federal Reserve System has not been approved.

C. If the Board approves such application the Commissioner shall within twenty (20) days of such action issue a certificate of authority and mail the same to the corporation. If the Board denies the application the Commissioner shall, with-

in twenty (20) days of such action, mail a notice of the denial to the corporation, stating therein the reason or reasons for the denial."

Citicorp urges that "shall" as used in Section 313 controls. *Oklahoma Alcoholic Beverage Control Board v. Moss*[1] states the general rule:

"In the construction of statutes 'shall' is usually given its common meaning of 'must' and interpreted as implying a command or mandate, depending upon the construction of the statute as a whole and the intention of the legislature."

Citicorp cites *State v. Hunt*[2] which elaborates as follows:

"In common, or ordinary parlance, and in its ordinary signification, the term 'shall' is a word of command, and one which has always, or which must be given a compulsory meaning; as denoting obligation. It has a preemptory meaning, and it is generally imperative or mandatory. It has the invariable significance of excluding the idea of discretion, and has the significance of operating to impose a duty which may be enforced, particularly if public policy is in favor of this meaning or when addressed to public officials, or where a public interest is involved, or where the public or persons have rights which ought to be exercised or enforced, unless a contrary intent appears; but the context ought to be very strongly persuasive before it is softened into mere permission."

Although in some cases "shall" in a statute has been held directory rather than mandatory by the courts,[3] clearly Section 313 standing alone would compel a mandatory construction of "shall" in this case.

█ But the Oklahoma cases in support of a mandatory construction join a host of decisions from other jurisdictions[4] which invariably condition a mandatory construction upon a finding that there be no contrary legislative intent apparent. Let us examine this case in terms of *State v. Hunt*.[5] To apply the *Hunt* standard we must inquire: (1) Does a "contrary intent" appear? (2) If so is it in a "strongly persuasive context"?

Obviously the last line in Section 301, "The issuance of such certificate shall be within the sole discretion of the Board" evidences an intent contrary to the usual meaning of "shall". What is its context? It appears in the same Article III of the Banking Code, and has existed since that Code's adoption in 1965. From then until 1982 the provisions of Section 313 appeared in Section 307. At that time Section 301 was amended in part[6] and the text of Section 307 was moved to Section 313. We are compelled to conclude that had the Legislature intended Section 313 to be mandatory it would have either (1) not enacted the last

1. 509 P.2d 666 (Okl.1973).

2. 286 P.2d 1088 (Okl.1955).

3. See e.g. *Banking Bd. of Okla. v. Wilkerson*, 642 P.2d 1141 (Okl.1982); *In re Vrooman's Estate*, 206 Okl. 8, 240 P.2d 754 (1952).

4. *State v. Hunt*, supra note 2 at 1090; *Oklahoma Alcoholic Beverage Control Board v. Moss*, 509 P.2d 666, 668 (Okl.1973); *Barnes v. Transok Pipeline Co.*, 549 P.2d 819, 822 (Okl.1976). *Jersey City v. Department of Civil Services*, 10 N.J.Super. 140, 76 A.2d 830, 835 (N.J.1950); *State ex rel. City of Indianapolis et al. v. Brennan, Judge, et al.*, 231 Ind. 492, 109 N.E.2d 409, 411 (1952); *Faunce v. Carter*, 26 Wash.2d 211, 173 P.2d 526, 528 (1946); *City of Colorado Springs v. Street*, 81 Colo. 181, 254 P. 440, 441 (1927); *National Transit Co. v. Boardman*, 328 Pa. 450, 197 A. 239, 241 (1938); *Holmes v. Royal Loan Ass'n.*, 128 Mo.App. 329, 107 S.W. 1005, 1007 (Mo.1908); *Smith v. Curtis*, 223 S.W.2d 712, 714 (Tx.Civ.App.1949); *Nat'l. Surety Corp. v. Ladd*, 131 Tex. 295, 115 S.W.2d 600, 602 (1938); *Reed v. Wellman*, 110 Neb. 166, 193 N.W. 261 (1923); *Ballou v. Kemp*, 92 F.2d 556, 558–559 (D.C.Cir.1937); *In the Matter of E.B.*, 109 Wis.2d 1, 325 N.W.2d 64, 67 (Wis.App.1982); *Edwards v. Sadusky*, 4 Ohio App.3d 297, 448 N.E.2d 506, 510 (1982).

5. Id.

6. The word "charter" in the first sentence was amended to "certificate". Also Sub-section (B) was added.

"B. This article contains procedures by which the Commissioner and the Board may reach informed decisions with respect to applications for authority to organize state banks and trust companies. These procedures may be used in such other situations as the Commissioner shall deem appropriate."

sentence of Section 301 in the first place, or (2) stricken it when the section was amended in 1982. Since it did neither we find the requisite "contrary intent" in a "strongly persuasive context" that allows for a directory rather than mandatory reading of "shall".

■ Further, to give mandatory construction to Section 313 would be to repeal by implication the last sentence of Section 301. Repeals by implication are not favored in law or by this court.[7] The United States Supreme Court has said:

"It is a cardinal principle of construction repeals by implication are not favored. When there are two acts upon the same subject, the rule is to give effect to both if possible. (cites omitted) The intention of the legislature to repeal must be 'clear and manifest'". (cites omitted)[8]

■ Statutes that are apparently contradictory are to be interpreted in such manner as to give effect to both of them if possible. There is certainly less than "clear and manifest" showing here of intention to repeal Section 301.

Since by a directory reading of "shall" it is possible to give effect to both Sections, we hold that Section 301 giving discretion has not been so repealed.

## II

Before answering the second question we first look to the nature and extent of the discretion with which the Legislature has infused the Banking Board. K.C. Davis in his Administrative Law Treatise states:

"Every governmental and legal system in world history has involved both rules and discretion. No government has ever been a government of laws and not of men in the sense of eliminating all discre-

tionary power. Every government has always been a government of laws and of men. A close look at the meaning of Aristotle, the first user of the phrase 'government of laws and not of men,' shows clearly that he did not mean that governments could exist without discretionary power. In his book, If Men were Angels (1942), Jerome Frank abundantly supported this conclusion at 203: 'This much we can surely say: For Aristotle, from whom Harrington derived the notion of a government of laws and not of men, that notion was not expressive of hostility to what today we call administrative discretion.' "[9]

■ But, says Professor Davis, necessary discretionary power should be properly confined, structured, and checked.[10] It may be confined by the adoption of rules or statutes. It may be structured by stating findings and reasons, and following precedent, all of which are open to the public. It may be checked by administrative review or submission to the courts. Discretion which is unfettered, i.e. exercised without guiding rules in an *ad hoc* manner, will be stricken down.[11]

What of the discretion with which the Board has been vested by Section 301? It co-exists with a set of laws (rules) as spelled out in the Banking Code.

Section 301 requires a certificate of authority be issued by the Commissioner upon approval of the Board before engaging in banking or trust business in Oklahoma. The required contents of the application for certificate are clearly set forth in Section 305. Section 308 provides that the Commissioner hold a public hearing with notice to and participation by interested parties, and the procedures for conducting a hearing including the requirement that a transcript be made. Section 309 provides

---

7. *Wade v. Brown,* 516 P.2d 526 (Okl.1973).

8. *United States v. Borden Co.,* 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939); also see *U.S. v. SCRAP,* 412 U.S. 669, 696, 93 S.Ct. 2405, 2420, 37 L.Ed.2d 254 (1973); *Federal Trade Commission v. A.P.W. Paper Co.,* 328 U.S. 193, 202, 66 S.Ct. 932, 936, 90 L.Ed. 1165 (1946).

9. K.C. Davis, "Administrative Law Treatise", Vol. 2, Ch. 8 "Control of Discretion", P. 165.

10. Id. at 167, et seq.

11. *Morton v. Ruiz,* 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974).

for a public file available to interested persons and requires the presiding officer to issue findings of facts and conclusions of law based on the material contained in the record and that the same be mailed to participants. Participants are then allowed to file written objections. Section 310 then provides for the Banking Board to consider the application. Appeal of the Board's decision to the Oklahoma Supreme Court by any party directly affected and aggrieved is allowed under Section 311. The Code sets forth these procedural safeguards to insure that the Board does not exercise the discretion granted it in Section 301 in an *ad hoc* manner.

▮▮▮ Further, the discretion of the Board must be exercised within constitutional limits.[12] These limits proscribe the Board's exercise of its discretion in an arbitrary or capricious manner which would deny an applicant due process or equal protection under the law.[13] For the legislature to grant the Board unfettered discretion would clearly offend both due process and equal protection under the law.[14] We find, therefore, that the Board has "sole discretion" only after the procedural safeguards of the Banking Code have been followed and within the constitutional limits which prohibit the exercise of discretion which is arbitrary or capricious. For these reasons we hold that the discretion allowed by Section 301 was not an unlawful delegation of legislative authority without proper standards or guidelines.

Having exercised its discretion, the Board's action is now subject to judicial review to determine whether it has exceeded its statutory authority or acted in an arbitrary or capricious manner.[15] We therefore turn to the second question: Did the Board abuse its discretion by acting arbitrarily and capriciously?

The basis for the Board's denial is set forth in its Conclusions of Law as follows:

"4. The legal issues involved in the pending appeal of the Federal Reserve Board order approving Citicorp's acquisition of the Trust Company are inextricably intertwined with Oklahoma Banking Board consideration of Citicorp's application to engage in the savings and trust business in Oklahoma through Citicorp Savings and Trust Company. Due to the existence of such issues, and the precedential nature of the Banking Board's decision on the present application, affirmative action should not be taken by the Banking Board until existing issues of federal law are resolved by the 10th Circuit Court of Appeals."

On March 24, 1983 Citicorp submitted an application to the Federal Reserve Bank of New York to engage in specified bank type activities in Oklahoma. Notice inviting public comment was published, resulting in the filing of an objection by the Oklahoma Bankers' Association. The OBA urged, *inter alia*, that acquisition by Citicorp of an Oklahoma chartered trust company violated state and federal law. The application was approved and then reviewed by the Board of Governors of the Reserve Bank. On November 17, 1983 the Board (FRB) by a split decision approved Citicorp's proposal, and the OBA appealed to the 10th Circuit Court of Appeals.

At the hearing before the Banking Board it is clear that the Board wanted to stay a decision until that appeal was resolved. It was so moved and seconded,[16] but withdrawn when counsel advised there was no

---

**12.** *To Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Glass v. United States,* 506 F.2d 379 (10th Cir. 1974); *Lowery v. Richardson,* 390 F.Supp. 356 (E.D.Okl.1973); *Halsey v. Nitze,* 390 F.2d 142 (4th Cir.1968).

**13.** Id.

**14.** *White v. Roughton,* 530 F.2d 750, 754 (7th Cir.1976); *Holmes v. New York City Housing*

*Authority,* 398 F.2d 262, 265 (2nd Cir.1968); *Hornsby v. Allen,* 326 F.2d 605, 610 (5th Cir. 1964); *United States v. Atkins,* 323 F.2d 733, 742 (5th Cir.1963).

**15.** *Capital Cities Cable, Inc. v. Crisp,* —— U.S. ——, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984).

**16.** TR, P. 31.

statutory authority for such a stay. Thus the denial was made without prejudice to refiling upon receipt of a favorable ruling in the 10th Circuit.

Citicorp urges on appeal that the Board acted arbitrarily and capriciously. In *Trans-Pacific Freight Conference v. Federal Maritime Commission* [17] it was held:

"Under the arbitrary and capricious standard our scope of review is a narrow one. After satisfying ourselves that the agency has acted within its statutory authority and that this action was accompanied by the appropriate procedural protections and was supported by sufficient evidence, we must inquire whether the rationale of the agency is both discernible and defensible. In undertaking this inquiry we may not substitute our judgment for that of the Commission, but may only assure ourselves that the agency decision was rational and based on a consideration of relevant factors." (footnotes omitted)

Obviously the rationale of the Banking Board is discernible. Is its order, which is tantamount to a stay, also defensible? In *Commerce Oil Refining Corp. v. Miner* [18] a federal court stayed an action to await a state court's decision. The court held

"Whether in a particular instance a federal court should stay its hand pending state court action seems to us a highly individual question in which all factors should be considered, the possible delay, the relative difficulty of estimating what the state court would decide, the importance to the case of a state court determination, the relative burden on the parties of a possibly long case in the federal court as against a short one in the state court, and perhaps other matters. The mere prospect of delay is not determinative." [19]

Here the Board was aware of the delay that would occur, but it was also aware of the impact the 10th Circuit decision would have on its action if it held that Citicorp's acquisition of the trust company had been illegal. Mr. Justice Cardozo spoke for the U.S. Supreme Court in *Landis v. North American Co.* [20] when he said:

"... [T]he individual may be required to submit to a delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted."

The Legislature has set the objectives of the Board as follows:

"The primary objectives of the Commission and Banking Board shall be to maintain a sound banking system, to encourage a competitive banking environment and to provide convenience to the public." [21]

If the Court of Appeals reverses the Federal Reserve Board's decision, then appellant by its own admission would most likely have to divest itself (Tr. p. 42). Divestiture would result in new ownership with unknown consequences including the probability of inconvenience to the public. We find the objectives of the Board are well served by the action taken, and we find no abuse of discretion, nor do we find the Board's action to be arbitrary or capricious.

### III

Appellant further contends that it was denied equal protection under the law because the Board arbitrarily imposed additional requirements upon it than upon other applicants. An equal protection argument takes place within the context of an alleged unconstitutional classification. Here the appellant argues the Board treated similar situations—those where the applicants had satisfied the requirements of Section 313—differently. There are two

---

**17.** 650 F.2d 1235, 1251 (D.C.1980). See also *National Association of Recycling Industries Inc. v. ICC (NARI II)*, 627 F.2d 1328 (D.C.Cir.1980).

**18.** 303 F.2d 125 (1st Cir.1962).

**19.** Id. at 128–29.

**20.** 299 U.S. 248, 256, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936).

**21.** 6 O.S.Supp.1982, § 307.1.

formal tests for determining whether a classification violates the equal protection guarantee—the rational basis test[22] and the strict scrutiny test.[23] Because we are not dealing with a fundamental right or a suspect class, and are reviewing differentiation of treatment between members of a class, the applicable test in this instance is the rational basis test. Under this test this court will sustain the action of the Board if there exists any conceivable rational basis for the difference in treatment by the Board.[24]

■ Here, we find that the pending federal appeal provides the required rational basis for the differential treatment of appellant by the Board, and that such treatment furthers legitimate state interests as set forth in Section 307.1 as the primary objectives of the Board. It is apparent from the record of the hearing that the Board wanted to defer any decision in the matter until the Court of Appeals upheld or overturned the Federal Reserve Board's order. However, when advised by legal counsel that the statute spoke in terms of approvals and denials but not stays,[25] the Board then denied the application without prejudice to resubmit at the conclusion of the federal appeal. Having found that in light of the pending federal appeal there is a rational basis for the differential treatment of appellant by the Board and that the Board did not act in an arbitrary and capricious manner but exercised reasonable discretion in denying the appellant's application without prejudice, we find no merit to appellant's contention that it was denied equal protection.

We hold, therefore, that the Board had discretion as to whether or not to issue the certificate in question, and that the Board did not exercise its discretion in an arbitrary or capricious manner nor did it abuse its discretion in not issuing a certificate in the instant case. We further hold that the Board's denial of the appellant's application

without prejudice to resubmit at the conclusion of the federal appeal did not deny appellant equal protection under the law.

The order of the Board denying the application of appellant without prejudice is affirmed.

SIMMS, C.J., DOOLIN, V.C.J., and HODGES, LAVENDER, HARGRAVE and OPALA, JJ., concur.

ALMA WILSON and KAUGER, JJ., concur in result.

---

22. *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).

23. *Roe v. Wade*, 410 U.S. 113, 155, 93 S.Ct. 705, 728, 35 L.Ed.2d 147 (1973).

24. Supra at 23.

25. Tr., p. 31–32, 38.