BLACK, Circuit Judge,
specially concurring:
I write separately because I think this is a much closer case than does the majority. In fact, my initial view was to dissent. It was only after going through the following process that I came to the same conclusion.
The Supreme Court has demanded courts meet a high standard before taking the drastic recourse of implicitly repealing one statute in the face of another. In light of this standard, my first course of action is to vigorously attempt to construe harmoniously the Limitation of Vessel Owner’s Liability Act, 46 U.S.CApp. §§ 181-189 (Limitation Act), and the Park System Resource Protection Act, 16 U.S.C. §§ 19jj — 19jj—4 (PSRPA). I cannot ignore, however, that the PSRPA is strict liability statute, while the Limitation Act incorporates a negligence standard, and that the PSRPA allows for unlimited in personam liability, while the Limitation Act would effectively restrict liability to the extent allowed in an in rem action. I ultimately conclude these structural differences are so integral to the two statutes as to render them irreconcilably in conflict.
I rely, however, on narrower grounds than does the majority. I do not look to the apparent purposes of the two statutes, their legislative histories, or their underly *950 ing policies. I also do not consider that courts have apparently taken a restrictive view of the Limitation Act or that Congress recently amended the Limitation Act.
Following on the irreconcilable conflict between the two statutes, I conclude the Limitation Act should be implicitly repealed to the extent it interacts with the PSRPA solely because the PSRPA was enacted more recently than the Limitation Act. I think it is unnecessary to invoke the canon that a specific statute can repeal a more general statute, and, in any case, I think both statutes are general.
Finally, my hesitancy in reaching the conclusion of implicit repeal in this case is due, in large part, to the fundamental principles of judicial restraint. After much deliberation, however, I conclude this is the rare case where the statutes are so irreconcilably in conflict that we are left with no choice but to hold the later one implicitly repeals the earlier one.
I.
I agree with the majority that we must follow here the “principle that statutes relating to the same subject matter should be construed harmoniously if possible, and if not, that more recent or specific statutes should prevail over older or more general ones.” S. Natural Gas Co. v. Land, Cullman County, 197 F.3d 1368, 1373 (11th Cir.1999). This statement, however, is based on precedent from the Supreme Court and this Court which demands that a high standard be met prior to undertaking the drastic step of implicitly repealing one statute in light of another. See Amell v. United States, 384 U.S. 158, 165-66, 86 S.Ct. 1384, 1388, 16 L.Ed.2d 445 (1966) (explaining that a party requesting the implicit repeal of one statutory provision in the face of a later-enacted provision “bears a heavy burden of persuasion”). The Supreme Court has articulated this high standard as follows: “ ‘[T]he courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.’ ” Andrus v. Glover Constr. Co., 446 U.S. 608, 618-19, 100 S.Ct. 1905, 1911, 64 L.Ed.2d 548 (1980) (quoting Morton v. Mancari, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974)); see also Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1018-19, 104 S.Ct. 2862, 2881, 81 L.Ed.2d 815 (1984) (quoting the above language and explaining that congressional silence in the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) concerning the remedy under the Tucker Act “cannot be construed to reflect an unambiguous intention to withdraw the Tucker Act remedy”); Reg’l Rail Reorganization Act Cases, 419 U.S. 102, 133-34, 95 S.Ct. 335, 353-54, 42 L.Ed.2d 320 (1974) (quoting Morton v. Mancari and explaining that the remedy under the Tucker Act should not be read to withdraw the Regional Rail Reorganization Act of 1973); Pan. R.R. Co. v. Vasquez, 271 U.S. 557, 561-62, 46 S.Ct. 596, 597, 70 L.Ed. 1085 (1926) (requiring “certainty” in statutory language in order to depart from “long-prevailing policy evidenced by” other statutes); In re E. River Towing Co., 266 U.S. 355, 367, 45 S.Ct. 114, 115, 69 L.Ed. 324 (1924) (“an intention to depart from a policy deliberately settled in a general statute is not lightly to be assumed”). The Supreme Court has long adhered to the principle that repeals by implication are not favored. See, e.g., Watt v. Alaska, 451 U.S. 259, 266-67, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981); Universal Interpretive Shuttle Corp. v. Wash. Metro. Area Transit Comm’n, 393 U.S. 186, 193, 89 S.Ct. 354, 359, 21 L.Ed.2d 334 *951 (1968); Silver v. N.Y. Stock Exch., 373 U.S. 341, 357, 83 S.Ct. 1246, 1257, 10 L.Ed.2d 389 (1963) (“the proper approach to this case, in our view, is an analysis which reconciles the operation of both statutory schemes with one another rather than holding one completely ousted”); FTC v. A.P.W. Paper Co., 328 U.S. 193, 202, 66 S.Ct. 932, 936, 90 L.Ed. 1165 (1946); United States v. Borden Co., 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939) (“When there are two acts upon the same subject, the rule is to give effect to both if possible.”); Ex Parte Yerger, 75 U.S. (8 Wall.) 85, 105, 19 L.Ed. 332 (1868) (habeas corpus context).
Early on, the Supreme Court articulated the high standard that must be met as follows: “[Repeals by implication] are seldom admitted except on the ground of repugnancy; and never, we think, when the former act can stand together with the new act.” Ex Parte Yerger, 75 U.S. (8 Wall.) at 105. More than 100 years later, the Supreme Court reiterated this high standard, approvingly quoting the following language: “ ‘A new statute will not be read as wholly or even partially amending a prior one unless there exists a “positive repugnancy” between the provisions of the new and those of the old that cannot be reconciled.’ ” Reg’l Rail Reorganization Act Cases, 419 U.S. at 134, 95 S.Ct. at 354 (quoting In re Penn Cent. Transp. Co., 384 F.Supp. 895, 943 (Sp.Ct.R.R.R.A.1974)); see also Mercantile Nat’l Bank v. Langdeau, 371 U.S. 555, 565, 83 S.Ct. 520, 526, 9 L.Ed.2d 523 (1963) (requiring “some manifest inconsistency or positive repugnance between the two statutes” to effect an implicit repeal); Borden Co., 308 U.S. at 198-99, 60 S.Ct. at 188 (quoting Wood v. United States, 41 U.S. (16 Pet.) 342, 363, 10 L.Ed. 987 (1842) (demanding a “positive repugnancy” between two statutory provisions for one to implicitly repeal the other)); Posadas v. Nat’l City Bank, 296 U.S. 497, 504, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936) (quoting Town of Red Rock v. Henry, 106 U.S. (16 Otto) 596, 601, 1 S.Ct. 434, 439, 27 L.Ed. 251 (1883) (requiring for an implicit repeal either “irreconcilable conflict” between two statutes or complete substitution of one by the other)).
The Supreme Court has worked arduously to construe statutes in harmony with each other. See, e.g., Ruckelshaus, 467 U.S. at 1018-19, 104 S.Ct. at 2880-81 (construing FIFRA provision under which failure to submit to arbitration proceeding results in forfeiture of right to compensation as exhaustion prerequisite to Tucker Act remedy, rather than as substitute for Tucker Act remedy); Radzanower v. Touche Ross & Co., 426 U.S. 148, 156-57, 96 S.Ct. 1989, 1994, 48 L.Ed.2d 540 (1976) (holding statute that allows for venue broadly and statute that restricts venue are not irreconcilably in conflict, since applying narrow venue provision in case would not affect the vast majority of actions, and suits could still be filed under the former statute); Pan. R.R. Co., 271 U.S. at 561-62, 46 S.Ct. at 597 (construing Jones Act provision regarding jurisdiction in district courts to relate only to venue so as not to conflict with other statutes which permit suit both in district court and state court); see also In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 974 F.2d 775, 787 (7th Cir.1992) (reconciling policies of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) and the Bankruptcy Act of 1898 rather than concluding the Bankruptcy Act bars CERCLA claims). By contrast, this Court has held a rule of civil procedure to implicitly repeal a statutory provision based on the determination that the two conflict to the point they simply cannot co-exist. See S. Natural Gas Co., 197 F.3d at 1375 (holding that where a rule granted district courts discretion to ap *952 point a commission to hear a case, and a separate statute allowed for a jury trial in accordance with state practice and procedure, the former superseded the latter).
II.
In accordance with the dictates of the Supreme Court, see supra Part I, my first course of action in analyzing the Limitation Act and the PSRPA is to assiduously attempt to harmonize these two statutes if at all possible.[1] I therefore focus on what I consider to be the most compelling arguments to allow for the harmonization of the Limitation Act and the PSRPA.
First, it is arguable that the Limitation Act and the PSRPA do not irreconcilably conflict since the Limitation Act limits recovery to a relatively narrow subset of claims arising under the PSRPA — only to those claims involving a vessel. The PSRPA provides: “[A]ny person who destroys, causes the loss of, or injures any park system resource is liable to the United States....” 16 U.S.C. § 19jj-l(a). A “park system resource” is, in turn, defined broadly as “any living or non-living resource that is located within the boundaries of a unit of the National Park System, except for resources owned by a non-Federal entity.” 16 U.S.C. § 19jj(d). “Park system resource,” therefore, encompasses both terrestrial and marine resources. While PSRPA claims can be based on destruction or injury to both terrestrial and marine resources, the Limitation Act applies, by definition, only to the small fraction of claims involving marine resources.[2] Perhaps on this basis, therefore, the two statutes are not “positively repugnant” and can co-exist in the vast majority of situations.
Even in situations involving marine resources, it is arguable the Limitation Act does not completely obliterate the PSRPA’s recovery scheme. Specifically, the Limitation Act allows for some measure of recovery to the United States for damages to park system resources under the PSRPA, and there is no reason to think the. PSRPA guarantees complete recovery to the United States. Under the Limitation Act, a vessel owner’s maximum liability, and thus an injured party’s recovery, are highly variable, as these amounts depend on the value of the vessel and its freight. See 46 U.S.C. app. § 183(a). While the vessel and its freight could be destroyed in the course of a loss incident, there is no reason to assume this worst case scenario would be the norm. The Supreme Court has pointed out “[t]he [Limitation] Act is not one of immunity from liability but of limitation of it.” Lake Tankers Corp. v. Henn, 354 U.S. 147, 152, 77 S.Ct. 1269, 1272, 1 L.Ed.2d 1246 (1957).
Turning to the PSRPA, while the majority is correct that there is nothing in the statute suggesting any limitation of liabili *953 ty, see Opinion at 942, there is also nothing in the statute to suggest the United States is entitled to complete recovery. While “damages” and “response costs” are defined broadly in the PSRPA, see 16 U.S.C. §§ 19jj(b), (c), the statute merely states that the Attorney General “may commence a civil action ... for response costs and damages[,]” id. § 19jj-2(a). The PSRPA makes no suggestion of and evinces no expectation of full recovery. As I do not believe broadly defined damages and response costs translate to full recovery of these sums, I respectfully disagree with the majority’s inference that the PSRPA contemplates full recovery. See Opinion at 942.
Furthermore, there are any number of defenses that could be asserted against a PSRPA claim which would limit the United States’ recovery. For example, in holding the Limitation Act applies to claims under the Jones Act, the Supreme Court explained, “The bankruptcy act might provide a bar to recovery — homestead and other exemptions might make collection of a judgment impossible — yet we do not suppose that it would be argued that such laws were overridden by section 33 [of the Jones Act].” In re E. River Towing Co., 266 U.S. 355, 368, 45 S.Ct. 114, 115, 69 L.Ed. 324 (1924). The Court observed that although the Jones Act does not explicitly restrict the applicability of the Limitation Act, “there can be no doubt that [the Limitation Act] would apply unless repealed.” Id. at 367, 45 S.Ct. at 115. In fact, the Court drew this conclusion even while noting the Limitation Act is not mentioned in the Jones Act’s list of statutory provisions to be repealed. See id. The Court therefore strongly implied the Limitation Act can apply to limit liability under a statute despite the Act’s absence from the governing statute’s list of repealed provisions. It follows that the Limitation Act can apply despite its absence from the PSRPA’s list of defenses. See 16 U.S.C. § 19jj-l(c). I therefore respectfully disagree with the majority’s suggestion that the PSRPA’s defenses are exclusive.[3] See Opinion at 942-44.
In sum, the recovery permitted under the Limitation Act is highly variable, the recovery under the PSRPA need not be complete, and the PSRPA’s enumerated defenses are not exclusive. That the Limitation Act, therefore, does not completely eviscerate recovery under the PSRPA could, arguably, support the harmonization of the Limitation Act and the PSRPA.
The goal of harmonization may draw support not only from the structure and language of the statutes themselves, but also from congressional activity with respect to another statute, the Marine Protection, Research, and Sanctuaries Act of *954 1972, 16 U.S.C. §§ 1481-14460-1 (MPRSA). The MPRSA was amended in 1988 to establish liability for any person or vessel that destroys, causes the loss of, or injures any sanctuary resource. See Act of Nov. 7,1988, Pub.L. No. 100-627, § 312, 102 Stat. 3215 (codified as amended at 16 U.S.C. §§ 1443(a)). Prior to 1992, the MPRSA was silent on the issue of whether the Limitation Act would apply. In 1992, however, Congress amended the MPRSA to preclude application of the Limitation Act. See Oceans Act of 1992, Pub.L. No. 102-587, § 2110(c), 106 Stat. 5039 (codified as amended at 16 U.S.C. § 1443(a)(4)). An inference can be drawn from this amendment that silence with regard to the Limitation Act is construed by Congress as permitting the unimpeded applicability of the Act. Otherwise, Congress would have had no need to amend the MPRSA to explicitly preclude the Limitation Act’s applicability.
III.
Despite a concerted effort to harmonize the Limitation Act and the PSRPA, I cannot ignore two extremely compelling arguments undermining this attempted harmonization.
First, I agree with the majority that the PSRPA is a strict liability statute. See Opinion at 942-43 & n. 5. In drawing this conclusion, I would, like the majority, rely on the narrow defenses enumerated in the text of the PSRPA, see 16 U.S.C. § 19jj-1(c), and on the comparison between the PSRPA’s defenses and the substantially similar ones in the MPRSA, a statute which imposes strict liability, see 16 U.S.C. § 1443(a)(3). See also United States v. M/V Jacquelyn L., 100 F.3d 1520, 1521 (11th Cir.1996). In fact, I note the defenses in the PSRPA are even slightly more narrow than those in the MPRSA, as the latter includes a defense for negligible destruction, whereas the former does not. Compare 16 U.S.C. § 1443(a)(3)(C), with 16 U.S.C. § 19jj-l(c). I would not, however, rely on the legislative history cited by the majority. See Opinion at 942-43; see infra Part V.
By contrast, the Limitation Act incorporates a negligence standard. The Act limits the liability of vessel owners for destruction occasioned “without the privity or knowledge of such owner[s].... ” 46 U.S.C. app. § 183(a). The Supreme Court has explained that “mere negligence, pure and simple, in and of itself does not necessarily establish the existence on the part of the owner of a vessel of privity and knowledge within the meaning of the statute.” Deslions v. La Compagnie Generate Transatlantique, 210 U.S. 95, 122, 28 S.Ct. 664, 673, 52 L.Ed. 973 (1908). The Former Fifth Circuit has elaborated that the Limitation Act “relievefs] the owner of personal liability, where he has not been personally negligent or privy to the negligence of his servants or agents, where in short the negligence or fault which causes the injury is attributable to him, not personally, but only under the doctrine of respondeat superior.” Cont'l Ins. Co. v. Sabine Towing Co., 117 F.2d 694, 698 (5th Cir.1941);[4] see also Craig v. Cont’l Ins. Co., 141 U.S. 638, 646, 12 S.Ct. 97, 99, 35 L.Ed. 886 (1891) (explaining the Limitation Act meant to exempt vessel owners from liability due to neglect of their agents or of third parties without the owners’ knowledge or concurrence, but not to diminish the owners’ responsibility for their own willful or negligent acts). In this ease, while the PSRPA would hold vessel owners liable for the *955 destruction of marine resources regardless of fault (with a few minor exceptions), the Limitation Act would limit this broad liability if the owners are negligent under respondeat superior, without more. The Limitation Act in this case would allow for unimpeded PSRPA Lability only in the narrow circumstance that these owners have acted in privity or with knowledge.[5] Applied in concert with the PSRPA, the Limitation Act would, therefore, eviscerate the strict Lability standard at the core of the PSRPA.
Second, the Limitation Act would limit the in personam remedy provided in the PSRPA to such an extent that it would have the effect of an in rem remedy. The PSRPA provides for both in personam and in rem liability. See 16 U.S.C. §§ 19jj-1. The Limitation Act limits the liability of a vessel owner to the value of the vessel and its pending freight. See 46 U.S.C. app. § 183(a). While the effect of the Limitation Act on an in rem remedy is not completely clear,[6] it is clear that the Limitation Act would reduce in personam LabLity from, potentially, the full extent of an owner’s personal assets to merely the value of the vessel and its freight. In personam LabLity under the Limitation Act would thus be effectively limited to the extent of in rem LabLity generally.[7] See, e.g., Shaffer v. Heitner, 433 U.S. 186, 207 n. 23, 97 S.Ct. 2569, 2581 n. 23, 53 L.Ed.2d 683 (1977) (noting that Lability in an in rem action is limited to the value of the property). By basing LabLity on the value *956 of the vessel and its freight, ¿a, on the res, rather than on the value of the full range of an owner’s personal assets, the Limitation Act would severely undercut the PSRPA’s extensive in personam liability and replace it with a more limited liability. Furthermore, the Limitation Act would impose liability resembling in rem liability, thereby substantially changing the character of the PSRPA’s in personam liability.
IV.
After much deliberation, I conclude the differences between the Limitation Act and the PSRPA regarding negligence versus strict liability and limited versus unlimited in personam liability go to the heart of the two statutory schemes. In my opinion, these differences in liability standards are repugnant to each other and evince irreconcilable conflicts between the two statutes. This is most clearly shown by the example of a vessel owner whose employees negligently cause damage to marine resources, but absent the owner’s privity or knowledge. Under the PSRPA and without the application of the Limitation Act, this owner would be held liable under the PSRPA’s strict Lability standard to the extent that his or her personal assets would permit, without regard to the value of the vessel. By contrast, under the Limitation Act, this same owner — who could ordinarily be held negligent under respondeat superior — would be liable only in the amount of the vessel and its pending freight.
It is true that many situations may arise where the Limitation Act may not substantially affect the recovery under the PSRPA. For example, where terrestrial resources are involved, the Limitation Act would not apply to limit recovery under the PSRPA. Additionally, where a vessel remains intact, recovery based on the value of the vessel may approach the potential in personam recovery against the vessel owner. See supra Part II. In this case, however, vessels and marine resources are at issue, and the alleged post-accident value of the vessel and its pending freight is approximately $2.8 million less than the damages sought by the United States and Allied Towing Corporation. See Opinion at 940. It misses the point to venture outside the bounds of this case and to speculate about situations involving terrestrial resources or minimal vessel damage. Here, both the PSRPA and the Limitation Act are, by their terms, potentially applicable, and they have substantially different consequences.
The argument that the two statutes will not always conflict to a significant extent is not only speculative, but also relates only to the practical outcome of the interplay between the PSRPA and the Limitation Act. That is, circumstances can be devised such that the Limitation Act will not substantially reduce PSRPA recovery. By contrast, the divide between negligence and strict liability and between limited and unlimited in personam liability will arise in every situation where a vessel injures marine resources, and these differences go to the theoretical foundations underpinning the PSRPA and the Limitation Act. Since they are integral and essential to the two statutory regimes, these differences in La-bility are sufficient to render the PSRPA and the Limitation Act repugnant to each other and irreconcilably in conflict.
Finally, an examination of maritime statutes with Limitation Act references detracts from the argument that the MPRSA amendment precluding the Limitation Act is evidence that silence permits the appL-cation of the Act. Of the various maritime statutes mentioned in the parties’ briefs, the Carriage of Goods By Sea Act, 46 U.S.C. app. §§ 1300-1315 (COGSA), and the Harter Act, 46 U.S.C. app. §§ 190-196, *957 explicitly allow for the application of the Limitation Act. See 46 U.S.C. app. § 1308 (COGSA); 46 U.S.C. app. § 192 (Harter Act).[8] By contrast, the Longshore and Harbor Workers’ Compensation Act, 33 U.S.C. §§ 901-950 (LHWCA), the Oil Pollution Act, 33 U.S.C. §§ 2701-2761(OPA), and the MPRSA, see supra Part II, explicitly preclude the application of the Limitation Act. See 33 U.S.C. § 948 (LHWCA);[9] 33 U.S.C. § 2718(c)(OPA); 16 U.S.C. § 1443(a)(4) (MPRSA).[10] As an initial matter, I therefore agree with the majority that the PSRPA’s silence with respect to the Limitation Act, without more, cannot yield a conclusion about the Act’s applicability. This determination does not affect the negative inference to be drawn from the MPRSA amendment.
There is, however, a pattern that statutes explicitly allowing for the application of the Limitation Act incorporate a negligence standard, while those explicitly precluding the application of the Limitation Act utilize a strict liability standard. Compare 46 U.S.C. app. § 1304(l)-(3) (COGSA) (no liability for carriers and ships so long as due diligence was used and absent actual fault, privity, or neglect), and 46 U.S.C. app. § 192 (Harter Act) (no liability for vessel and for its owners, agents, and charterers so long as owners exercise due diligence), with 33 U.S.C. § 905(a) (LHWCA) (in the absence of securing payment of compensation as otherwise required, a maritime employer is liable to deceased or disabled employees and may not invoke the defenses of fellow servant negligence, assumption of the risk, or contributory negligence),[11]33 U.S.C. § 2703(a)(OPA) (the only permitted complete defenses are act of God, act of war, and act or omission of a third party), and 16 U.S.C. § 1443(a)(3) (MPRSA) (the only permitted defenses are act of God, act of war, act or omission by a third party, injury caused by legally authorized activity, and negligible injury). This dichotomous pattern cuts against the conclusion that the pre-amendment silence in the MPRSA means the Limitation Act should ■apply. See supra Part II. When the MPRSA was amended in 1992, the dichotomous pattern was established, as the COG-SA, the Harter Act, the LHWCA, and the OPA — with their Limitation Act references — were all in effect in 1992. It therefore seems reasonable to suppose that in amending the MPRSA, a strict liability statute, to preclude the application of the Limitation Act, Congress may have simply been explicitly bringing the MPRSA in line with its statutory counterparts. The negative inference drawn from the MPRSA *958 loses some of its luster in the face of this possibility. I therefore conclude the MPRSA’s pre-amendment silence is indet-erminative.
V.
In reaching the conclusion that the Limitation Act and the PSRPA are in conflict, I rely exclusively on the irreconcilable conceptions of liability in the PSRPA and the Limitation Act. See supra Parts III & IV. There are other bases invoked by the majority on which I do not rely. Although I ultimately reach the same conclusion as the majority, my reasoning is more narrow.
First, I would not rely on the apparent purposes of the Limitation Act and the PSRPA, respectively, as understood by the majority.[12] See Opinion at 945-48. I similarly would not rely on the statutes’ legislative histories,[13] or the policies underlying the statutes.[14] Rather, statutory structure is a sufficient basis from which to draw a conclusion in this case.
Also, I would not consider the fact that courts have apparently taken a restrictive view of the Limitation Act. See Opinion at 945. Implicitly repealing an otherwise valid statute is a much harsher outcome than merely construing a statute narrowly. The apparently strict construction of the Limitation Act should therefore not influence whether the Act should be implicitly repealed. I would examine only whether the Limitation Act and the PSRPA are irreconcilably in conflict, not which statute has been judicially favored.[15] *959 By the same token, I also would not consider that Congress has recently amended the Limitation Act, see Coast Guard Authorization Act of 1996, Pub.L. No. 104-324, § 1129(a), 110 Stat. 3901 (codified as amended at 46 U.S.C. § 183(g)), in support of the position that the Limitation Act is vibrant and should not be implicitly repealed.
VI.
Upon reaching the conclusion that the Limitation Act and the PSRPA are irreconcilably in conflict, the second step of the analysis is to conclude the Limitation Act is implicitly repealed to the extent it interacts with the PSRPA. As with the question of irreconcilable conflict, see supra Part V, I reach the same answer as the majority, but on a narrower basis. I would repeal the Limitation Act rather than the PSRPA for the sole reason that the Limitation Act was enacted earlier in time than the PSRPA. See, e.g., S. Natural Gas Co. v. Land, Cullman County, 197 F.3d 1368, 1373 (11th Cir.1999). I would not, however, invoke the majority’s determination that this implicit repeal should also be based on the fact that the PSRPA is a more specific statute than the Limitation Act. See Opinion at 949. Given that the PSRPA is the more recent statute, the specific versus general basis is not necessary to reach the outcome that the PSRPA governs. Furthermore, I conclude the Limitation Act and the PSRPA are both general statutes.[16]
VII.
My anguish in reaching the conclusion that the Limitation Act should be implicitly repealed is due in large part to the principles of judicial restraint and separation of powers which underlie the particularly high standard required for an implicit repeal. Despite concerted attempts to *960 reconcile the PSRPA and the Limitation Act, however, I found myself unable to do so. The conceptions of liability embedded in these two statutes are simply too far apart and too integral to allow for reconciliation. Therefore, I am satisfied with the outcome of this case. I wish to stress, however, that this outcome is atypical and should arise only after an earnest attempt at statutory reconciliation.
VIII.
For all the reasons described above, I concur.

. By contrast, the majority seems to begin with the premise that neither harmonization nor implicit repeal is a more favorable option than the other. See Opinion at 942 ("[W]e begin by reviewing the language of both the PSRPA and the Limitation Act ... to determine whether the two Acts can be read harmoniously or if when read together they present ‘a positive repugnancy’ or conflict that cannot be reconciled.”).

. The majority acknowledges the PSRPA covers both terrestrial and marine resources. See Opinion at 948. Based on this observation, however, the majority argues the implicit repeal of the Limitation Act is supported by the need to avoid potentially disparate awards under the PSRPA for terrestrial and marine resources. See id. at 948. I respectfully suggest that it is not the role of this Court to determine Congress' intentions. See infra Part V. Had Congress wanted to avoid this potential result, it could have addressed the Limitation Act in the PSRPA.

. In support of this suggestion of exclusivity, the majority cites PSRPA’s legislative history, as well as Andrus v. Glover Construction Co., 446 U.S. 608, 616-17, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980), for the proposition that additional exceptions should not be inferred in the face of enumerated exceptions to a general prohibition. First, I would not rely on legislative history in the absence of a textual basis. See infra Part V. Second, I believe Andrus is distinguishable. In Andrus, a statute listed 15 exceptions to a general rule, the fifteenth of which applied to the given situation. Elsewhere, the statute prohibited the specific contract at issue unless it was authorized by one of a subset of the 15 exceptions. The fifteenth exception was not included in this subset. Andrus, 446 U.S. at 615-16, 100 S.Ct. at 1909-10. The Court therefore held that the fifteenth exception could not be implied with respect to the contract, as the exception was explicitly mentioned in one place and omitted in another. Id. This situation is distinguishable from the case at issue, since the three defenses permitted under the PSRPA, see 16 U.S.C. § 19jj-l(c), are not a subset of defenses mentioned elsewhere in the statute. I therefore believe Andrus does not provide a basis for precluding a Limitation Act defense.

. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

. I note that corporate owners, like individual owners, are subject to the privity or knowledge standard. See, e.g., Craig v. Cont’l Ins. Co., 141 U.S. 638, 646, 12 S.Ct. 97, 99, 35 L.Ed. 886 (1891) ("When the owner is a corporation, the privity or knowledge must be that of the managing officers of the corporation."); see generally 3 David E.R. Woolley, Benedict on Admiralty § 42 (7th ed.1998).

. The Supreme Court has stated that in a Limitation Act proceeding, "the court may enter judgment in personam against the owner as well as judgment in rem against the res ...." Hartford Accident & Indem. Co. of Hartford v. S. Pac. Co., 273 U.S. 207, 215, 47 S.Ct. 357, 359, 71 L.Ed. 612 (1927). Earlier, however, the Court explained that "[t]he proceeding to limit liability is not an action against the vessel and her freight, except when they are surrendered to a trustee....” Morrison v. Dist. Court of United States for S. Dist. of N.Y., 147 U.S. 14, 34, 13 S.Ct. 246, 253, 37 L.Ed. 60 (1893). I have difficulty understanding how the Limitation Act could apply to an in rem proceeding, as the statute explicitly applies solely to "the owner of any vessel.” 46 U.S.C. app. § 183 (emphasis added). In any case, since recovery in an in rem action is limited, by definition, to the value of the res, the Act's limitation of liability to the value of the vessel and its freight would seem to have no practical effect in the context of an in rem suit.

.I do not reach the conclusion drawn by the majority that the Limitation Act renders the PSRPA's in personam liability provision "mere surplusage.” See Opinion at 943-44 I view in personam and in rem liabilities as distinct. See 29 James W. Moore, Moore’s Federal Practice § 707.04[l][b][i] (3d ed. 2000) ("Of course, if the jurisdictional requirements for both in rem and in personam jurisdiction can be met, there is nothing to preclude a suit from being brought both in rem and in personam.”); 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1070 (2d ed. 1987) ("[I]t is still important to distinguish actions based on property from those based on personal jurisdiction because of their different consequences.”). I think that even when the Limitation Act applies, both in personam and in rem remedies under the PSRPA are preserved. The Limitation Act merely reduces the in personam liability such that the maximum recovery in both in personam and in rem suits is limited to the value of the vessel and its freight. Since both types of suit would still be available under the Limitation Act, I would not go so far as to say that in personam liability would be "meaningless” or "surplusage.” See Opinion at 943-44. Rather, my point is that the Limitation Act substantially reduces in personam recovery and transforms its essential character.

. The Jones Act, 46 U.S.C. app. § 688, and the Death on the High Seas Act, 46 U.S.C. app. §§ 761-767 (DOHSA), are silent as to the application of the Limitation Act. These statutes, therefore, will not be considered here. Courts, however, have held that these Acts allow for the application of the Limitation Act. See, e.g., Pettus v. Jones & Laughlin Steel Corp., 322 F.Supp. 1078 (W.D.Pa.1971) (permitting assertion of Limitation Act defense to Jones Act claim); The Four Sisters, 75 F.Supp. 399 (D.Mass.1947) (allowing for the possibility that Limitation Act applies to DOHSA claim).

. At least one court has inexplicably addressed the merits of a Limitation Act defense against a LHWCA claim, rather than citing the LHWCA's language precluding the Limitation Act's applicability. See Bates v. Merritt Seafood, Inc., 663 F.Supp. 915 (D.S.C.1987).

. I will not here address the alternate, statute-specific liability schemes set forth in the OPA, see 33 U.S.C. § 2704, and the COGSA, see 46 U.S.C. app. § 1304(5).

. LHWCA permits suits against vessels (i.e., in rem actions) under a negligence standard. See 33 U.S.C. § 905(b). This provision is not relevant here since the Limitation Act appears to apply only to in personam actions. See supra note 6.

. For example, from legislative history that explains the PSRPA was enacted to allow for legal action that would result in funds for resource recovery, the majority infers "the PSRPA is aimed at full restoration of park resources....” Opinion at 751 (emphasis added). Similarly, the majority concludes "the PSRPA is aimed at ensuring that the person or instrumentality responsible for any destruction, loss, or injury covers all of the costs associated with such destruction, loss, or injury....” Id. at 946 (emphasis added). As discussed above, see supra Part II, I do not believe the PSRPA exhibits an expectation of full recovery. In any case, I have difficulty seeing how the inference of full recovery follows from the cited legislative history.

. Based on these principles, I would not, like the majority, approvingly discuss the Ninth Circuit’s invocation of legislative purpose in holding the Limitation Act implicitly repealed in the face of the Trans-Alaska Pipeline Authorization Act, 43 U.S.C. §§ 1651-56 (TAPAA). See In re the Glacier Bay, 944 F.2d 577 (9th Cir.1991). The Ninth Circuit determined that Congress' purpose in enacting the TAPAA was to establish a comprehensive liability scheme for oil spills, and that "Congress, in enacting TAPAA, was clearly concerned about the ability of existing laws to compensate innocent victims of a disastrous trans-Alaska oil spill.” Id. at 583. On this basis in part, the Ninth Circuit concluded "[t]he Limitation Act is contrary to every aspect of TAPAA.” Id. I respectfully disagree with this approach.

. For example, the majority mentions that limiting the liability of the owners of vessels causing damage to natural resources would ultimately burden the taxpayer. See Opinion at 948.

. In any case, the cases cited by the majority for the proposition that the Limitation Act has been viewed restrictively do not conclusively establish this proposition. First, any criticism of the Limitation Act from Maryland Cas. Co. v. Cushing, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954), comes from the statements of the dissent. See id. at 437, 74 S.Ct. at 623 (Black, L, dissenting). By contrast, the plurality — whose remarks on this issue are not disputed by the lone concurring justice — sings the praises of the Limitation Act with respect to its underlying policies. See id. at 416-17, 74 S.Ct. at 612. As stated by the Court: "[I]f [the Limitation Act] is administered with a tight and grudging hand, construing every clause most unfavorably against the ship-owner, and allowing as little as possible to operate in his favor, the law will hardly be worth the trouble of its enactment.” Id. at 422, 74 S.Ct. at 615 (quoting Providence & N.Y. S.S. Co. v. *959 Hill Mfg. Co., 109 U.S. 578, 588-89, 3 S.Ct. 379, 385-86, 27 L.Ed. 1038 (1883)). Second, in Hercules Carriers, Inc. v. Claimant State of Florida, Department of Transportation, 768 F.2d 1558 (11th Cir.1985), this Court concluded that courts are obligated to apply the Limitation Act as it is written, despite apparent judicial reservations about the Act. See id. at 1565.

. I draw this conclusion because the two statutes cover broad sets of circumstances, which are mutually exclusive to a considerable extent and which intersect narrowly. That is, the Limitation Act covers the vessel-induced destruction of the sweeping range of property outside the realm of park system resources — including all private property— while the PSRPA does not extend to this property. Similarly, the PSRPA covers injury to the vast expanse of terrestrial park system resources, while the Limitation Act does not. The intersection of the two statutes is the narrow circumstance where a vessel injures marine park system resources.
This confluence of two general statutes is exemplified in Silver v. New York Stock Exchange, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963). In Silver, the Supreme Court confronted the interplay between the Securities Exchange Act of 1934, which allows for self-regulation by securities exchanges, see 15 U.S.C. § 78f, including rules restricting interaction between exchange members and non-members, and the Sherman Anti-Trust Act, see 15 U.S.C. § 1, which proscribes collective action by exchange members to the detriment of non-members. See generally Silver, 373 U.S. at 347, 352-53, 83 S.Ct. at 1252, 1254-55. The Securities Exchange Act broadly regulates exchanges regardless of anti-trust implications, while the Sherman Act prohibits anti-trust activity generally, including circumstances not involving securities exchanges. The two statutes intersect in the narrow circumstances where securities exchanges are involved in potential restraints of trade. See id. at 349, 83 S.Ct. at 1252-53. Silver thus provides a model for this case. While I conclude the Limitation Act and the PSRPA are both general statutes, my primary reason for not broaching the specific versus general basis is that it is not necessary in this case.